Salter *vs.* Glenn, Duffield & Company.

SAMUEL P. SALTER, plaintiff in error, *vs.* GLENN, DUF-
FIELD & COMPANY, defendants in error.

Where the Court below granted a new trial upon the ground that the ver-
dict was contrary to the evidence, and it appears from the record that
there was conflicting evidence in the case, and sufficient testimony to
have sustained the finding of the jury:

*Held*, That, while this Court will, reluctantly, interfere with the province
of the Court below in granting new trials, yet, it is important to
the fair administration of justice that, in all cases where the verdict of
the jury is not strongly and decidedly against the weight of evidence,
new trials on this ground ought not to be granted.

Where, during the trial of a cause in Court, two jurors go into a grocery
to take a drink with a third party, and meet one of the parties plain-
tiff in the grocery, and the other party is called in, and takes a drink,
and before leaving the party, defendant, thus called in, treats to cigars,
and one of the jurors takes from his roll of money a twenty-five cent
piece, and hands it to the bar-tender, and the same juryman also takes
off the bottle of whiskey, all this being known to the plaintiff, and
transpiring in his presence:

*Held*, That such conduct by jurors is reprehensible, and the exculpatory
affidavits filed do not relieve it of all obnoxious appearances.   Yet as
the plaintiff was cognizant of it, and informed his counsel, and no mo-
tion was made in the premises, but the case went on to verdict without
objection, the granting a new trial, on this ground, was not authorized
under the rules of law.

When the Judge charged the jury that, whilst it is true, as a general rule,
that two or three witnesses are better than one, and will be more read-
ily credited, yet, in this case, upon the point of what this contract was,
if the jury believed that the contract was made between one of the
plaintiffs, Mr. Wright, alone, and the defendant, it is witness against
witness, and the plaintiffs cannot sustain their version of the contract
without additional proof:

*Held*, That such charge was error, that the witnesses being both of them
parties, the case ought to have been submitted to the jury to determine
the credibility under all the facts and evidence of the case, and that
the Court ought to have granted a new trial on this ground.

New Trial.   Jury.   Before Judge COLE.   Houston Supe-
rior Court.   August Term, 1869.

Glenn, Duffield & Company sued Salter for $6,834 50
balance on account.   He pleaded that he was their agent to

Salter *vs.* Glenn, Duffield & Company.

buy cotton; was furnished by them with money for that purpose, and did buy large quantities, specified, for which they agreed to pay him the usual, reasonable, commissions, and that two and a half per cent. on the purchases was reasonable. And he appended to his plea *his* version of the account between them. In it, he charges himself with cash furnished by them, $54,600 00, took credit for $52,761 28, all of which he said he paid out for cotton, bought by him for them, except $5,000 00, which he lost, without any fault on his part. This left them in debt to them $1,838 72. The account then charged them with $9,847 28, being two and a half per cent. on the purchases made by him for them, from specified parties, $3,365 75 of which was on account of an alleged purchase of cotton from Jourdan, and $5,625 00 on account of another from Beall. He claimed balance of $8,008 56, as due to him, and prayed judgment therefor.

Wright testified, that he employed Salter for the firm, and that the contract was that Salter was to have two and a half per cent. on amount paid for small lots of cotton, say from one to fifteen bales, and $1 00 per bale, on large lots; that the account sued on showed the correct balance due the firm. He said Salter contracted for fifteen hundred bales of cotton from Beall, at thirty cents per pound, and paid a *bonus* of $25,000 00, furnished by the firm, but that Beall's cotton was seized by the United States authorities, and the trade, with Salter's consent and approval and at his suggestion, was rescinded; Salter also contracted for one thousand bales from Jourdan, at thirty cents per pound, but as the plaintiffs did not like the samples, they would not take it. But a few days thereafter, Wright, in person, went and bought the Jourdan cotton, by paying thirty cents per pound, and $500 00 to Jourdan's agent. Plaintiffs closed.

Salter testified that the contract was, that he was to have two and a half per cent. He said that he bought the Beall cotton when it was worth thirty-two or thirty-three cents per pound, and that the trade was rescinded in his absence, with-

out his participation or knowledge, when cotton had declined to twenty-eight cents. He admitted that they, at first, declined taking the Jourdan cotton, which he had bought, but that the taking of it, at last, was under information given by him to Wright, and that Wright went, lest Salter's going might arouse suspicion and prevent the sale. He also read papers showing that he was authorized to buy any number of bales of cotton for plaintiffs, and an account against him, rendered by Glenn, one of plaintiffs, in which $20,000 00, in gold, was stated as on the "Beall cotton account."

Other witnesses, including the other parties, testified, touching said $5,000 00 lost, and the facts as to the Beall and Jourdan cotton, and to what compensation was usual for purchasing agents, giving facts and admissions, *pro* and *con.*, as to whether the $5,000 00 was carelessly lost, and as to who really bought said cotton, plaintiffs or defendant.

Argument being had, the counsel for the defendant requested the Court to charge the jury as follows:

1st. That the plaintiffs must prove their accounts sued on, the burden of proof being upon them.

2d. That if the jury believe the account to be taken from the books of plaintiffs, and to purport to give a correct statement of their doings with defendant, as their agent, giving credits as well as debits, and if, from the account itself, they see that important credits are not given to defendant, the omission casts suspicion upon the entire account and the books from which it purports to be taken.

3d. That if plaintiffs rely upon the plea of defendant as proof of their account sued on, they must take the entire plea; they cannot offer a part of it in evidence as an admission without 'offering all, and if any of it be evidence for them, all is for the defendant.

4th. That, in this case, the plea not having been given in evidence by plaintiffs, cannot be used as evidence by them.

5th. That, if the jury believe that the admission in the plea is founded upon information derived by defendant from

Salter *vs.* Glenn, Duffield & Company.

plaintiffs, and that the defendant has been deceived by such information, such admission is no evidence for plaintiffs, especially if the jury believe that the plaintiffs kept the books of account between them and defendant.

6th. That the account sued on here, purporting to give, correctly, the debits and credits, and to strike a correct balance between plaintiffs and defendant, an omission of any important credit casts suspicion on all the account, and the correctness of the balance is clearly disproved; and if the jury believe, from the evidence, that such omission is in the account, the testimony of plaintiffs, that it is correct, is strictly disproved and contradicted, nor can the plea of defendant be used as admitting its correctness or strengthening plaintiffs' case, because said plea is utterly against the correctness of such balance.

7th. That, if the jury believe that these accounts between plaintiffs and defendant were kept in the books of the plaintiffs, such books furnish the highest evidence of the account sued on, and the failure of plaintiffs to produce said books raises a strong presumption that said books, if produced, would operate to their prejudice.

8th. That if the jury believe that the plaintiffs in this case have contradicted each other, or made statements at one time inconsistent with and contradictory to statements made at another time, or have been contradicted by others upon points material to the issue, especially as they are the plaintiffs and directly interested, and especially if the witness contradicting them be disinterested, they become unworthy of credit in this case, and the jury are at liberty to discredit them altogether, and especially, in this case, as to contradictory statements upon material points made, under oath, in answer to interrogatories in the same case.   It is not necessary to call the attention of the witness to the contradictory statements then made under oath, before impeaching him.

9th. That, whilst it is true, as a general rule, that two or three witnesses are better than one, and will be more readily

credited, yet, in this case, upon the point of what this contract was, if the jury believe that the contract was made between one of the plaintiffs, (Mr. Wright) alone, and the defendant, it is witness against witness, and the plaintiffs cannot sustain their version of the contract without additional proof.

10th. That, if the plaintiffs seek to produce the admissions or confessions of defendant, as such additional proof, the law is, that all such admissions should be scanned with care, and that, if the jury believe, from the evidence, that the defendant stated, when charged that the contract was $1 00 per bale, that he did not, it is tantamount to a denial that such was the contract, etc., and is no admission of it.

11th. That the *time and place* are of the utmost importance in admissions, where but one witness testifies to it especially; and if that witness be a party interested and makes contradictory statements on oath about time and place, such admission, always to be scanned with care, becomes utterly worthless and cannot avail against defendant.

12th. That, if the jury believe from the evidence that the defendant arranged all the preliminaries of the contract for the Jourdan cotton and completed the same, except the mere payment of the money, and one of the plaintiffs did that, defendant is entitled to his commissions thereon, whatever those commissions may be.

13th. That, if the jury believe from the evidence, that defendant made the contract for the Beall cotton and a *bonus* of $25,000 00 was paid to Rust, the agent of Beall therefor, the contract was a binding one, and Beall became responsible to plaintiffs for the cotton or damages in lieu of it, and defendant became entitled to commissions thereon, whatever those commissions may be.

14th. That if the plaintiffs afterwards rescinded the trade with Beall, even with the advice of defendant, defendant is still entitled to his commissions, unless he expressly waived and gave them up.

15th. That, if the contract for the Beall cotton was re-

Salter *vs.* Glenn, Duffield & Company.

scinded, because of the failure of plaintiffs to comply with their contract for the Beall cotton by paying the money therefor, then the defendant is clearly entitled to commissions thereon, and even if the contract was rescinded because of the seizure by the Federal authorities, plaintiffs should have looked to Beall for damages, and not sought to visit it on their agent by depriving him of his commissions.

The first request was given; the second, third, fourth, fifth, sixth, seventh and eighth were refused; the ninth was given; the first clause of the tenth was given, the latter refused; the twelfth request was given; the thirteenth was given, but with the emphatic qualification that if Salter assented to a rescission of the trade, he was not entitled to his commissions; the fourteenth and fifteenth were refused.

The jury returned a verdict for the defendant for ($3,-737 09) three thousand seven hundred and thirty seven dollars and nine cents. Whereupon counsel for the plaintiffs moved for a new trial, as follows:

1st. Because the verdict of the jury in said case is contrary to law and the evidence, and against the principles of justice and equity.

2d. Because said verdict is decidedly and strongly against the weight of the evidence introduced on the trial of said case.

4th. Because of the misconduct of John S. Pool and William F. Engram, two of the jury who tried said case, as shown by the affidavit of F. M. Henser.

5th. Because of the misconduct of and improper influence used by the defendant on John S. Pool and William F. Engram, two of the jurors in said case, as shown by said affidavit of F. M. Henser.

6th. Because C. J. Goodwin, one of the jury who tried said case and rendered said verdict, was not an impartial, but a prejudiced juror, and because of his misconduct, as shown by the affidavit of Patrick Gray.

7th. Because the Court erred in giving in the charge to

the jury on the trial of said case, the following written re-
quest of defendant's council, to-wit: That whilst it is true,
as a general rule, that two or three witnesses are better than
one and will be more readily credited; yet in this case, upon
the point of what this contract was, if the jury believe the
contract was made between one of the plaintiffs (Mr. Wright)
alone and the defendant, it is witness against witness, and
the plaintiffs cannot sustain their version of the contract
without additional proof.

The fourth, fifth and sixth grounds were explained by af-
fidavits of the following purport:

*Henser's affidavit:* In the evening after Court adjourned,
Engram, Pool and Salter came into the store, one called for
a bottle of whisky, and all of them took a drink. Some
money passed between Salter and Pool; the whisky was paid
for by one, (which, he did not know,) and after the drinking,
Pool said he was going to carry the bottle with him.

*Pat Gray's affidavit*: Goodwin came to where Gray and
one Solomon were talking, said he had a chill and was near
giving up, when he and Gray had the following colloquy,
substantially, as Gray remembered it:

" I told him he ought to hold out, as it was an important
case, and had taken two days in the trial already. That it
involved a great deal of money, and I should like to have
some of it myself. He said yes; that it was all northern
capital and he thought that Salter might as well have his
part of it. I then remarked that I thought the men were
from Tennessee or Kentucky. He said that might be, but
they were engaged or operated upon Northern capital."
Gray also swore: " I do not know the juror, nor do I know
him except from information derived from said Solomon. I
know that he was on the jury that was trying the case referred
to, because I had seen him on it while the trial was going on."

It was shown that neither plaintiffs nor their attorneys
knew these facts before the verdict, except that they knew
the facts stated in Henser's affidavit, shortly before the Court

Salter *vs.* Glenn, Duffield & Company.

met next morning, when the concluding argument in the cause was to be resumed.

In response, Salter's counsel produced the affidavit of Goodwin, giving this version of the meeting with Gray and Solomon :

"The affidavit of said Pat Gray is untrue.    Deponent went off the jury to the basement of the Court-house on the adjournment of the Court for dinner, on Wednesday last; having had a chill on the jury, and being feverish, he went to the zinc or block-tin basin there for the purpose of bathing his face and head.    Gray and Cary Solomon were conversing there.    Deponent remarked that he had a chill, and hoped the lawyers would not consume much time in the argument of the cause as he was sick.    This deponent said whilst bathing his head, and in reply to Cary Solomon, who said to deponent that he was looking feeble.    That he never said a word about the cause, except to express the hope that the lawyers would not argue long as aforesaid.    That he did not say ' it was all northern capital, and he thought that Salter might as well have his part of it,' or anything like it. That he never heard Gray say that the case had taken two days, was an important case, and that he, deponent, ought to hold out, that it involved a great deal of money, and he, Gray, should like to have some of it himself, nor did he hear him say he thought the men were from Tennessee or Kentucky, nor did he, deponent, reply, ' that might be, but they were engaged in or operating upon northern capital,' nor any words to that effect or like it, at all.

" This deponent swears positively that he had no conversation at all about the case, with said Gray or Solomon, on the occasion referred to, except to express the hope that the lawyers would not argue long, nor did he hear them or either of them say one word about the case on that or any other occasion.    That he was not there but one or two minutes at farthest, just bathed his head and face and left, and if anything passed between Gray and Solomon about the case,

deponent did not hear one word of it. That deponent was so particular in observing the charge of the Court not to speak about the case or suffer any one to speak to him about it, that he did not even mention to his wife what case he was sitting upon till it was over. That he knew none of the parties, never saw defendant, Salter, till this Term of the Court, and was perfectly impartial and unprejudiced as a juror. That he is more positive that he had no conversation with said Gray, and that his statement is untrue, because he, deponent, had no acquaintance at all with said Gray, and would not know him now if he were to see him."

Solomon's affidavit said Goodwin's narrative of what he said and did was true, and that the other remarks passed between Solomon and Gray after Goodwin left.

Engram, Pool, Salter and one Burnside, gave the following explanation of the drinking, etc., by their respective affidavits.

*Engram's affidavit:* " On Tuesday, at adjournment of Court for dinner, went in company with John S. Pool, to the store of G. W. Killen & Company to take their lunch in the counting office of said store. When they got there, Mr. Wright, one of the plaintiffs, was at the table where the water-bucket was. Pool asked Wright to drink with us, saying we have a bottle of whisky there. Wright declined, stating that he had a bottle himself, and asked us to drink with him, taking his bottle from under the table and setting it on the table. We declined, and he then set it back under the table.

" On Wednesday evening, after Court adjourned for the night, Pool and deponent went again to the same place, in company with James Burnside, who got a bottle of whisky and asked us to drink with him. Wright was there then also. Deponent took a drink and left. Does not know whether the others drank. Salter was also there with Wright, but neither Salter nor Wright asked deponent to drink, but he drank with Burnside, who called for the whisky, and deponent supposes paid for it.

Salter *vs.* Glenn, Duffield & Company.

"Deponent never drank with defendant (Salter) during the progress of the trial. Had never been acquainted with him up to this trial. Never exchanged a word with him about the case, nor on any other subject, except once to ask him how old he thought a horse was. This was all he ever said to Salter, and Salter's reply was, 'over five years old.' That was all Salter said to him (deponent) pending the whole trial, and even that reply was not made specially to deponent, for there was a crowd around, and others judging the age of the horse.

"Deponent further states that he was perfectly impartial as a juror, had no bias or leaning for or against either party, but decided the case according to the right, as he honestly believed."

*Pool's affidavit:* "Deponent, on Tuesday last, at the adjournment of the Court for dinner, went in company with William F. Engram, one of his fellow jurors, to the store of George W. Killen & Company to take their lunch in the counting office of said store. When they got there, Mr. Wright, one of the plaintiffs, was at the table where the water-bucket was. Deponent asked Wright to take a drink with him and Engram, deponent and said Engram having a bottle of whisky there. Wright declined, stating that he had a bottle himself, and asked them to drink with him, producing his bottle and placing it on the table. They declined drinking with him, and then Wright put his bottle back under the table.

"On Wednesday evening, after the adjournment of Court, deponent met James Burnside in the streets near the Courthouse, and said to him, 'let's have a drink, it is your treat,' to which Burnside replied, 'let's go to George Killen's and get it.' On the way to Killen's they met W. F. Engram, and invited him to go along with them, He accepted the invitation, and they went over together. After they got into the house, Burnside stepped to the door and called Salter. He, Burnside, went into the store and bought the whisky.

"Wright, one of the plaintiffs, being in the house at the

table where the water sat, Burnside then set out the bottle when Engram drank and left. Burnside and deponent then drank. Burnside asked Wright to take a drink, which he declined, stating he had just drank. Then Burnside invited Salter to drink, and after the others had drank he did so. After the drinking, Salter, standing at or near the front door of the store, drew out his money to pay for some cigars, when deponent, by way of a prank and in jest, took from the money twenty-five cents, which he handed to Henser, the clerk. Wright was present and the cigars were distributed among the company, including Wright. This is all the money that ever passed between Salter and deponent, and must have been the money alluded to in Henser's affidavit.

"Deponent carried the bottle of whisky off, as Burnside had told him he could do so. Salter never treated or offered to treat deponent during the progress of the trial, to whisky or anything else, and he had no conversation with Salter concerning the case, either before or pending the trial, and that his mind was impartial between the parties, and he was influenced in his verdict by the law and testimony alone, as he understood them."

*Burnside's affidavit:* "The affidavit of Henser has been carefully read to him in relation to the transactions therein set forth. Deponent saith, that at the adjournment of the Court on Wednesday evening last, he met Pool on the street near the Court-house, who said to deponent, ' Let's have a drink, it is your time to treat,' to which deponent replied, ' let's go to George Killen's and get it.' On the way to Killen's store they casually met Engram, and invited him to go along and drink with them. Upon the arrival of deponent and said two jurors at the store they found Wright, one of the plaintiffs in said case, there. After reaching there deponent called the defendant, Salter, and invited him to take a drink. Deponent bought and paid for a bottle of whisky, and when it was opened Engram took a drink and then went off. Subsequently thereto, deponent and Pool

Salter *vs.* Glenn, Duffield & Company.

drank, afterwards Salter took a drink.   Deponent also invited Wright to drink, who excused himself, saying he had just drank.   Deponent told Pool he might have the remainder of the bottle, and he took it and carried it away.

" Before the parties separated Salter called for cigars, and taking out a role of his money to pay for them, Pool, apparently in jest and for the purpose of playing a prank upon him, took twenty-five cents out of the bundle and handed it to the clerk, (Henser.)   When the cigars were put out such of the party as smoked, including Wright, helped themselves to them.

" Deponent was present during the whole time of this transaction, and everything that was said and done was in the presence of said Wright.   There was no conversation whatever had between Salter and any of the parties touching said cause, and so far as deponent knows, or believes, the meeting and subsequent intercourse of the parties aforesaid was altogether casual, and was not brought about by any previous arrangement and understanding whatever."

*Salter's affidavit:*   " The affidavit of Henser filed with the motion for a new trial in said case has been read to him, and he states in relation to the charges therein contained against him and the jurors, Pool and Engram, that on Wednesday evening last, after the adjournment of the Court, James Burnside called him and asked him to come over to the store of Killen.   That he went to said store, and upon reaching there he found Wright, one of the plaintiffs, the two jurors aforesaid, and the said Burnside.   He took a drink out of a bottle there upon Burnside's invitation; that he drank with neither of the jurors aforesaid, and had no conversation with either of them upon the subject of the case then on trial; that everything said and done by or to said jurors on the occasion in question, was said and done in the presence of said Wright.   That after deponent had taken his drink, and was standing with the balance of the party near the store door, he, deponent, ordered some cigars, and

taking his roll of money from his pantaloons pocket to pay for his cigars, was unrolling it, and to his surprise, and without speaking at all on the subject to him, the said Pool took a twenty-five cent bill, seemingly in play and jest, from the pile, and handed it to said Henser, the clerk. When the cigars were furnished, such of the party as smoked, including Wright, helped themselves. Deponent says that said meeting, and the incidents connected therewith, was entirely casual, and not the result of any previous understanding or arrangement between him and any of said parties."

The Court granted a new trial on the following grounds:

" 1st. Because the jury found contrary to the evidence and the decided weight of the evidence.

" 2d. Because there was a decided interference with two of the jury, that had a tendency to impair the purity of jury trials, and especially as the finding of the jury was against the evidence and without sufficient evidence to support it.

" 3d. Because the Court erred in charging the 9th request of the defendant's counsel. I should have charged that in such a case they must weigh the evidence and find their verdict according as they believed from the evidence, and that they might look into all the evidence and see whether one or the other was corroborated." This grant of a new trial is assigned as error.

S. D. KILLEN; HALL & BROWN, NISBETS & JACKSON, for plaintiff in error. Burden of proof on plaintiffs: 1st Ch. Pl., 228, 229; Gould's Pl. Ch., 3, secs. 184, 189. As to discrediting witnesses: Code, secs. 3816, 3808, 3809; 1st Murphy's R., 124; Hawkins' P. C., 323. Admissions: Code, sec. 3739. As to new trials: Code, secs. 3662, 3666; 33d Ga. R., 529; 21st, 261; 22d, 211. Finney *vs.* Sandford; Sims & Co. *vs.* Humber, June Term, 1870; Brown *vs.* Reed, this term. The requested charge was right: 1st Ch. Pl. and Gould's Pl. *Supra;* 33d Ga. R., 182; Code, secs. 3080, 3815, 3816, 3737. As to jury: 11th Ga. R., 203; 17th, 414; 34th, 379; 18th, 534; 28th, 382.

Salter *vs.* Glenn, Duffield & Company.

S. HUNTER, LANIER & ANDERSON, for defendant.

LOCHRANE, C. J.

The record in this case comes before this Court on exceptions taken to the judgment of the Court below granting a new trial. It appears that Glenn, Duffield & Company brought their action on an account against Salter to recover a balance alleged to be due of $6,834 50. To this action Salter, by plea, set up a contract entered into between himself and the plaintiffs to purchase cotton for them, and for which he was to receive certain commissions. The plea sets out fully the contract, the cotton bought, the account between these parties, alleging the sum of $8,008 56 to be due him, for which he prays judgment against the plaintiffs. The case came on for trial at the August Term, 1869, and the jury found for the defendant against the plaintiffs the sum of $3,737 09.

At the same term of the Court a motion for a new trial was made by the plaintiffs upon several grounds, and the Judge granted the new trial on three of the grounds taken, to-wit: First, Because the jury found contrary to the evidence, and against the decided weight of the evidence. Second, Because there was a decided interference with two of the jury that had a tendency to impair the purity of jury trials, and especially as the finding of the jury was against the evidence, and without sufficient evidence to sustain the verdict. Third, Because the Court erred in charging the ninth request of the defendant's counsel, which was as follows: " 9th. That whilst it is true, as a general rule, that two or three witnesses are better than one, and will be more readily credited, yet, in this case, upon the point of what this contract was, made between one of the plaintiffs, (Mr. Wright,) alone and the defendant, it is witness against witness, and the plaintiffs cannot sustain their version of the contract without additional proof." And these are the grounds presented for review as the assignments of error in this case.

1. It is not a question under our Code, sections 3860 to 3670, inclusive, but that the Superior Courts may grant new trials and the judges may " exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of evidence :" Code, section 3666. And in cases not provided for in the Code, this sound legal discretion is to be exercised " according to the provisions of the common law and practice of the Courts."

In this case the defendant in error urges with earnestness and confidence, that the discretion of the Judge has been abused in granting a new trial on the first ground, that the verdict was contrary to the evidence. It will be seen that the exercise of this discretion is lodged by the law in the Superior Courts, and how far it may be reviewed on writ of error we will briefly examine before passing on the merits of its exercise in this case, remarking that it has been often held by this Court, as a rule, that this Court will be more indisposed to control the decision below in granting than in refusing a new trial : 35th Georgia, 291 ; 36th Georgia, 321, 604. This general principle may be found as universally admitted and the reasons which have led to it are not only reasonable but legal. Many of the cases go farther than mere indisposition or reluctance, and broadly assert that only in extreme cases will it be done : 26th Georgia, 164. These terms do not define accurately the ground of interference. They are based upon principles well recognized ; but the difficulty arises on the application of them to the case. In 36th Georgia the principle is more clearly stated. Judge Walker delivering the opinion says : " When the Court below grants a new trial and no principle of law is violated, this Court will not disturb the ruling." In 40th Georgia, 91, by Brown, Chief Justice, the judgment of the Court is substantially the same, the question being did the Court abuse his discretion in granting a new trial.

After this brief glance at what has been decided, we lay down the rule as now established, that the Court below is

Salter *vs.* Glenn, Duffield & Company.

invested with a sound legal discretion in granting or refusing new trials, and where, in the legitimate exercise of that discretion, no rule of law, or the principles of equity regulated by law has been violated, and the power vested in the Superior Court has been judicially administered, this Court will not assume the control of the legal discretion of the Judge below. Our right only arises in an abuse of it, or in some error of law committed by the Court in its exercise. We are not prepared to treat the judgments of the presiding Judge, fresh in the memories of the trial and witnesses to the proceedings in the Court, and with a better opportunity relating to do justice between the parties as matters of little weight. On the contrary, with a full appreciation of the ability of the judges below, we consider their judgments, particularly in matters of granting or refusing new trials, with close scrutiny before we will assume the control of setting them aside.

In this case, we do not deem it necessary to go through this volume of testimony, nor express our opinions of its merits or demerits, further than is demanded for the purposes of our judgment. We find that the testimony conflicts as to the material points of the matters in issue. First, as to the matter of compensation, how much the defendant was to receive; and second, as to the Beall and Jordan lots of cotton, whether he was entitled to his commissions on these lots. In the Beall cotton, the rescission of the purchase, its effect, and the consent thereto, the whole matter arising out of the contract and compensation was fairly laid before the jury, and there was evidence either way to have sustained the verdict, sufficient not to have set it aside. And in matters of verdicts found by juries upon facts fairly submitted, Courts, because of individual opinions of the evidence, ought not to infringe the rights of juries by setting aside their verdicts, except such verdict is strongly and decidedly against the weight of the evidence, or contrary to evidence and the principles of justice and equity.

And where Courts set aside verdicts except upon principles laid down, *it is error;* for the law nowhere authorizes such judicial interference with the fundamental rights of trial by jury. Dissatisfaction with the finding of the jury is no ground to set it aside. There must be an act in the verdict violative of law. That act may consist in the jury finding against the decided weight of the evidence; for the law demands that they shall find according to the evidence under the rules of law, and the law directs the verdict in cases of decided weight or preponderance. And in this case we hold that the first ground did not invoke judicial interference to set aside the verdict.

2. The second ground of error is the granting a new trial upon the misconduct of the jury. There is nothing in which Courts will go farther than in their protection of the jury box. Here every precaution is necessary for the proper and pure administration of justice. But in the jury box, if purity and integrity are not preserved, every principle of right and virtue dies. This Court has been vigilant in protecting the jury from even the suspicion of injustice. In *Walker vs. Walker,* 11 Georgia, 204, where one of the jurors was entertained at the expense of a party, the verdict was set aside, notwithstanding the affidavit of Respass, the juror, that he had been intimate for twenty years with the party, had not conversed with him about the trial, nor was he influenced by the act, etc. And again, where the attorney took home the horse of one of the jurymen, in their decision, as well as many which might be quoted, Courts have gone far to set aside verdicts when the jury have been tampered with. But in this case, the evidence on the part of the jurors accused seems to exculpate them from any criminal intent on their part. In the case of Goodwin, the statement of Gray was contradicted both by the juror and by the witness who was present, and we do not think that what transpired was sufficient to set aside the verdict.

In relation to the other two jurors, the evidence discloses

Salter *vs.* Glenn, Duffield & Company.

that, casually, they went to the grocery to get a drink. The plaintiff was there, and the defendant was called in. He drank after they drank, and going to the counter to treat to cigars, one of the jury took twenty-five cents from the roll of money and handed it to the clerk. The evidence is that he carried off the bottle of whisky. It is true, both parties were present, both looking on and participating. It is also true, that counsel knew of what transpired before concluding the case, and yet went on with the argument. All these facts are true, and we may, in the most generous view of this case, think that nothing really corrupt was intended, or did, in fact, transpire, and yet we are not altogether satisfied with the meeting and mingling of jurors and parties at this grocery. This Court, in 18 Georgia, 534, has held it insufficient to set aside a verdict, when some of the jurors entered a grocery and had conversation with various persons, not in relation to the case, and in presence of the bailiff and the accused. But the Court regarded the conduct reprehensible, notwithstanding the exculpatory affidavits of the jurors and bailiff, and only affirmed the verdict because no injury resulted from the improper conduct.

We might remark that the practice of receiving exculpatory affidavits is not generally received in support of verdicts, no more than in impeachment of them, and is restricted to such issue only as applies to the juror himself, in case of purging contempts. The mere fact of taking a drink in a grocery will not vitiate, but where the party treating calls in the defendant, and he and the plaintiff are both present and one of the jurors takes off the bottle, there may be something in this unexplained liberality that might have been intended to, and in fact did influence the result. In the case of misconduct, in 2 Swan, 348, the Court evidently held the treating of the juror to soda water, etc., by defendant, improper, but inasmuch, under the practice of Tennessee, as it appeared, he was in favor of a verdict for plaintiff, it was held insufficient to set aside the verdict. And in 8 Grattan it

is not misbehaviour for jurors to drink with a witness for the Commonwealth, if it is done in the presence of the sheriff and as a courtesy. Such is the principle held in 32 Maine, 334. Misconduct, without injury to either party, will not vitiate. But in the case under review, the misconduct, although explained, is still uncertain as to its effects upon the finding.

If it was known to the plaintiff, however, it was his duty to have made objection, if he believed it was injurious to him or his interests, and having failed to make it known at the time, he will be held, under the circumstances, to have waived it; and it is too late to complain after the verdict is found against him. And we do not hold that a new trial ought, on this ground, to have been ordered.

3. We come now to the last proposition in this case, and that is upon the Judge's charge, as requested. We are clearly of opinion this this charge was error, and the Court ought, to have granted a new trial on this ground. " If the jury believe that the contract was made between one of the plaintiffs, Mr. Wright alone, and the defendant, it is witness against witness, and the plaintiffs cannot sustain their version of the contract without additional proof." In *Brooks vs. Smith,* 21st Georgia, 261, this Court held : " Where the testimony seems to be equally balanced, a single witness deposing on each side, the Court will not grant a new trial because the verdict is contrary to the evidence. It is for the jury alone to decide upon the credibility of the witnesses. This case is decided by the principle laid down in 39 Georgia, 359–60, and in the case of *Brown vs. Reed,* at this term ; and we therefore affirm the judgment of the Court below granting a new trial on this ground.

Judgment affirmed.