## 258.  NIAGARA FIRE INSURANCE CO. *v.* WILLIAMS.

1. Where, in the progress of a trial, the plaintiff submits testimony which the defendant moves to exclude on the ground that the plaintiff has no pleadings to authorize its introduction, and the judge announces that he will sustain the motion, and to meet such ruling the plaintiff immediately offers, and the court allows, an amendment to his pleadings, and thereupon both parties and the court proceed with the trial, with the impression manifestly prevailing upon the minds of all that the effect of allowing the amendment is to reinstate the testimony, and the defendant gives active acquiescence to the recognition of this putative status, after verdict based on such testimony the defendant will be estopped from contending that the testimony should be suppressed from the record, even though no affirmative action was taken by the court reinstating it.

2. The principle announced in *Johnson* v. *Ætna Ins. Co.*, 123 *Ga.* ·404, and in *Thornton* v. *Travelers Ins. Co.*, 116 *Ga.* 122, is applicable in this case.

3. A verdict will not be set aside for immaterial error. An error in the admission of testimony tending to support a fact over which there is no conflict in the evidence is immaterial.

Action on insurance policy, from city court of Valdosta—Judge Hansell presiding. January 31, 1907.

Argued April 1,—Decided April 11, 1907.

*King, Spalding & Little, W. E. Thomas*, for plaintiff in error.
*Denmark, Ashley & Smith, Ernest W. Edwards*, contra.

POWELL, J. Jennie Williams obtained judgment against the insurance company on a policy of fire-insurance, on account of the burning of a dwelling and furniture; a new trial was refused, and the company excepts. The policy contained the usual clause: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple." The defendant pleaded that the

insured did now own the house in fee simple, and that she had merely a bond for title, the vendor of the same still retaining title for security of an amount of unpaid purchase-money. Upon cross-examination the plaintiff admitted this to be the state of her title. She then testified to a state of facts showing that the company, at the time the policy was issued, knew of the true state of her title and had therefore waived the clause of the policy in question. Counsel for the defendant moved to exclude this testimony, on the ground that the plaintiff had no pleading to authorize its admission; whereupon the court ruled: "I will sustain the motion." Counsel for the plaintiff thereupon immediately tendered an amendment, pleading the waiver, and the court allowed the amendment. So far as the record discloses, the court never formally retracted his ruling sustaining the motion to strike out from the record the testimony mentioned, but the defendant went forward and introduced testimony in denial of the evidence given by the plaintiff on that point, and counsel for both parties, in their argument to the jury, discussed this testimony of the plaintiff as if it was still in the record; and the court in his charge to the jury so treated it, by basing instructions thereon. When the brief of the evidence was presented, this testimony, by direction of the trial judge, was included, and the above explanation was given in connection with his approval of the brief. One of the exceptions taken is to the action of the court in requiring this testimony to be incorporated in the record.

1. The exception just mentioned is primal in relation to the case; especially so since, if the testimony referred to be eliminated from the record, the verdict is, as a matter of law, contrary to the evidence. In strict regularity, when the amendment had been tendered and allowed, counsel for plaintiff should have offered the testimony again, or should have invoked some other or further ruling of the court looking to its formal reinstatement; but in the trial of almost every case much strictness of regularity is omitted and many waivers take place without formal words to that effect. The mutual acquiescence of counsel, shared by the court, often gives recognition to the substantial existence of things which in strict legal contemplation do not exist. If the letter of the law alone be regarded, all witnesses, in order that their statements may become testimony, must be solemnly sworn (*Akridge*

v. *Noble,* 114 *Ga.* 960) ; but if the oath be entirely omitted and the trial proceed without objection, a waiver results, and the statements of the witness become as formal evidence in the case. *Rhodes* v. *State,* 122 *Ga.* 568; *Southern Ry. Co.* v. *Ellis,* 123 *Ga.* 614. A written instrument, strictly speaking, is not "in evidence" until it has been read to the jury, with the consent of the court, but in the actual trial of cases this formality rarely occurs. In the case at bar, defendant's counsel, by introducing testimony in reply to that of the plaintiff which was the subject-matter of the ruling, and by discussing her testimony on this point in his argument to the jury, gave to the impression, apparently universally prevailing among all who were engaged in the trial, that the effect of the allowance of the amendment offered to meet the court's ruling was to eliminate that ruling and restore the evidence, such acquiescence as to create an estoppel against the contention, after verdict, that such a result did not in fact follow.

2. The substance of the testimony just referred to is that the plaintiff, desiring to insure her property, went to one McNamee, who had been writing insurance, and asked for a policy; but he told her that he no longer represented a solvent company, and suggested the names of certain other agents. Without any direction from the plaintiff to do so, McNamee presented the matter to Staten, the agent of the defendant company, who wrote the policy in question and gave it to McNamee, who in turn carried it to the plaintiff. McNamee demanded the premium of her, but she refused to pay it until she could see Staten. McNamee brought the policy while she was at breakfast; and when she had finished eating she took the policy and went to Staten's office. She handed him the policy and asked him if he knew anything of it; he replied that he did, and that it was all right. They had a further conversation on the subject in which she told Staten that she only had bond for title, and had not finished paying for the place. After this conversation Staten folded up the policy, handed it to her, and she paid him the premium. This states the plaintiff's testimony, which, while contradicted, is to be taken by us as the truth of the transaction, since the jury, by the verdict, has settled all issues of fact in her favor. The insurance company contends that this makes a case which falls within the doctrine of the line of decisions holding that when the policy, as did this one, contains

an express provision negativing the right of any agent to waive any of the conditions of the policy, the insured can not rely upon any knowledge, conduct, or agreement of such agent after the issuance of the policy, so as to defeat a condition or warranty expressed therein (*Lippman* v. *Ætna Insurance Co.,* 108 *Ga.* 391; *Reese* v. *Fidelity Life Asso.,* 111 *Ga.* 482; etc.), and not within the doctrine of *Johnson* v. *Ætna Insurance Co.,* 123 *Ga.* 404, and *Thornton* v. *Travelers Ins. Co.,* 116 *Ga.* 122, which hold that when the agent is on notice at the time of entering into the contract that the interest of the insured is different from that required by a condition of the policy, the company is estopped from asserting the forfeiture. Knowledge coming to the agent after the consummation of the contract does not operate to create a waiver, but knowledge prior thereto does so operate. Until the plaintiff finally accepted the policy and paid the premium, the contract in this case, as we view it, had never been consummated. Until she paid the premium or expressly or implicitly agreed to pay it, there was no consideration for the contract. Ordinarily the acceptance of a policy raises an implied promise to pay the premium, but, under the circumstances of this case, the plaintiff's manual possession of the instrument did not imply her acceptance of it. It is true, as contended by counsel, that if, during the short time she had the policy in her possession, the house had burned and she had sued, it would have been very easy for her to perpetrate a fraud by claiming that she did in fact accept it; but as was said by Justice Lumpkin in *Jones* v. *Gilbert,* 93 *Ga.* 607, when a similar contention was made, "Whether this be so or not, nothing of the kind actually happened, and it does not appear that either Gilbert or his wife derived any benefit whatever from the policy. . . Simply because a possible opportunity may have been afforded Mrs. Gilbert, innocently or otherwise, to make a wrongful claim under the policy in case of her husband's death, it will not be gratuitously assumed that she would have done so, or that Gilbert contemplated such possible use of the policy and sanctioned it in advance."

3. The exception to a portion of the charge wherein it is contended that the judge intimated an opinion upon issuable facts is not well taken. Further exception is taken to the admission of the testimony of a certain expert witness, as to what sum would

be required to rebuild the house. If this was error at all, it fell within the category of the immaterial, since the other evidence, with this excluded, was such as to leave no issue as to what should be the amount of the verdict. New trial will not be granted on account of harmless errors, errors that could not legally have affected the result.                    *Judgment affirmed.*