47078.   CLYATT v. THE STATE.

ARGUED APRIL 3, 1972—DECIDED JULY 7, 1972—
REHEARING DENIED JULY 25, 1972.

Murray M. Silver, for appellant.

Lewis R. Slaton, District Attorney, Joel M. Feldman, Carter Goode, James H. Mobley, Jr., Richard E. Hicks, for appellee.

STOLZ, Judge. ■ On February 2, 1971, at 4:25 p.m., Atlanta Police Officer C. L. Ellington presented Judge T. C. Little of the Atlanta Municipal Court an application for a search warrant containing the following affidavit: "Received information from a reliable and confidential informant who has furnished me information in the past 90 days that resulted in one arrest and recovery of marijuana, opium derivatives and dangerous drugs, furnished the following information on February 1, 1971. Informant was personally in the above apartment on one occasion in January 1971. Informant states that he personally saw David Cyott [sic] selling and storing narcotics and drugs at 964 Charles Allen Dr., N. E. Apt. 12 during the week of January 25, 1971. Informant further states that he has observed several persons going to and from the above described location that had been observed by him as being known drug abusers." After considering the application, Judge Little found probable cause existed and signed the warrant. Approximately 9 hours later at 1:16 a.m. on February 3, Detective Ellington and other officers executed the warrant and found marijuana, 42 capsules of LSD, 80 tablets of LSD, and hashish.

Defendant contends that the credibility of the informant whose information was offered as probable cause was not established in the affidavit by a satisfactory showing of underlying circumstances; that the informant's conclusions

were not satisfactorily shown to be credible; that the magistrate issued the warrant without making the required informed and deliberate determinations; and that the trial court considered information not brought to the magistrate.

The affidavit of Detective Ellington showed that the informant had been in defendant's apartment on one occasion during the week of January 25, 1971; that the informant had personally observed the defendant selling narcotics and drugs; that the informant personally observed persons known to him as drug abusers going to defendant's premises; and that within the past 90 days the informant had furnished information which resulted in the arrest of one person and the recovery of various illegal drugs.

The informant's reliability was established by the affiant's statement to the effect that he had information from a reliable and confidential informant who had given him reliable information in the recent past (90 days). See *Marshall v. State,* 113 Ga. App. 143, 144 (147 SE2d 666); *Pass v. State,* 227 Ga. 730 (6b) (182 SE2d 779); *Thrall v. State,* 122 Ga. App. 427, 428 (177 SE2d 192). The underlying circumstances by which the informant gained his information were established by his personal observations of the defendant's selling and storing narcotics and the presence of known drug abusers at his apartment within a week of the execution of the search warrant. See *Sams v. State,* 121 Ga. App. 46 (172 SE2d 473); *Steele v. State,* 118 Ga. App. 433 (3c) (164 SE2d 255); *Thrall v. State,* supra, p. 428; *Johnston v. State,* 227 Ga. 387, 389 (181 SE2d 42); *Burns v. State,* 119 Ga. App. 678, 683 (168 SE2d 786).

The information in the affidavit on which the warrant was based was not stale. The phrase, "the week of January 25th," was used to protect the informant's identity. See *Scull v. State,* 122 Ga. App. 696, 700 (178 SE2d 720). The search warrant was taken out the day after receiving the information. Even if the informant's observations were made on the earliest day possible, the 25th, the execution was still within the 10-day period after issuance allowed by *Code Ann.* § 27-306 (Ga. L. 1966, pp. 567, 569).

The trial court did not consider any evidence other than that considered by the issuing magistrate. The judge's statement, that his practice is to talk to the officer a little bit and make a notation of that so he can refresh his memory, apparently referred to the judge's own policies in issuing search warrants generally, and does not indicate that he privately interrogated the affiant as to matters not presented to the issuing magistrate. The magistrate read the affidavit before issuing the warrant, which was tendered in evidence without objection.

The affidavit met the standards set out in Spinelli v. United States, 393 U. S. 410 (89 SC 584, 21 LE2d 637), as quoted in *Johnston v. State,* 227 Ga. 387, supra, pp. 390, 391, to wit: "that the magistrate is obligated to render a judgment based upon a common-sense reading of the entire affidavit . . ." and "that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause."

The magistrate's determination of probable cause must, accordingly, be given great deference by this reviewing court. Enumerated errors 1 and 2 are without merit.

■ As stated in *Hughes v. State,* 228 Ga. 593, 594 (187 SE2d 135) and cit., "generally there are four factors to be considered in determining whether a failure to proceed swiftly to trial assumes due process proportions: . . ."

(a) The length of delay.—Here, a period of only approximately 6 months elapsed between the date of the defendant's indictment on May 7, 1971, and the date of his trial on November 17, 1971. "The mere passage of time is not enough, without more, to constitute a denial of due process." *Hughes v. State,* supra, p. 595.

(b) The reason for delay.—Apparently the case was called for trial several times and continued on the State's motion based on the absence of a material witness.

(c) The prejudice to appellant.—The appellant alleges prejudice in that the person who had been arrested with him and had been present when the case was initially called for trial, was serving a prison sentence for marijuana

possession in another State when the case came on for trial. Although the defendant, by innuendo, attempted to interpose that the drugs found in his apartment must have belonged to the missing witness since they did not belong to him, he had previously testified that he knew that the drugs did not belong to the missing witness.

(d) Waiver by appellant.—There was no evidence that the defendant ever objected to the continuances or filed a demand for trial within the meaning of *Code* § 27-1901. See *Spurlin v. State,* 228 Ga. 2 (1) (183 SE2d 765). Furthermore, the defendant made no motion for continuance to secure the missing witness's attendance, nor was there evidence presented that the witness was under subpoena. Compare *Spurlin v. State,* supra, Hn. 2. Nor did he attempt to call as witnesses his alleged two friends, one the alleged owner of the money found in his apartment on February 3, the other the lessor of his apartment at the time of the October, 1971 raid.

Enumerated error 3 is not meritorious.

■ Enumerated error 5 complains of the demonstration in the courtroom of a bag containing what was subsequently identifed as hashish and marijuana, which the defendant's landlady testified she observed him carry from his apartment, on the day before the trial commenced, and leave in a vacant lot, and which she retrieved. Her testimony was in response to the defendant's counsel's question on cross examination, "So far as you have known, you have never seen anything immoral or illegal?" Although counsel initially objected to the relevancy of her answer as to what happened the day before the trial commenced, he thereupon pursued that line of questioning further; hence, he has no standing to complain about her responsive answer to his questions, which he himself elicited. *Potts v. State,* 86 Ga. App. 779 (3) (72 SE2d 553); *Scott v. State,* 57 Ga. App. 187 (1) (194 SE 844). Furthermore, the evidence was admissible to show the defendant's identity, motive, scheme, and intent. *Morris v. State,* 228 Ga. 39, 45 (184 SE2d 82); *McNeal v. State,* 228 Ga. 633 (187 SE2d 271); *Sloan v. State,* 115

Ga. App. 852 (156 SE2d 177). Therefore, the denial of a mistrial on this ground was not error.

■ Enumerated error 4 is on the overruling of the defendant's motion for mistrial based on his arrest for the offense referred to in Division 3, supra, in the halls of the courthouse, allegedly before a juror after the jury's dispersal at the close of the evidence. The record shows that the defendant's counsel related this information to the judge on the day it allegedly occurred, whereupon the judge said that he would hear from both counsel about it. On the following day, the defendant's counsel made his motion, supported solely by his own statement that a woman, whom, he could state in his place, he could identify by appearance only as one of the jurors in this case, was standing in front of the elevator when a police officer arrested the defendant, saying "You are under arrest for this latest violation." Opposing counsel argued that there was a question as to whether the juror saw what transpired and, if so, whether she knew what was going on or heard it; that the juror would normally anticipate an arrest for marijuana possession after evidence thereof had been elicited during the trial by the defendant's counsel; and that, therefore, no prejudice had been shown. The trial court, in overruling the motion, admitted that the defendant should not have been arrested in the presence of a juror, but stated that whatever harm may have occurred would be remedied by the instructions he gave the jury prior to their dispersal and by those he would (and subsequently did) give them.

"The trial judge in passing on motions for mistrial has a broad discretion, dependent on the circumstances of each case, which will not be disturbed unless manifestly abused . . . [cits.]. Unless it is apparent that a mistrial is essential to preservation of the right of fair trial, the discretion of the trial judge will not be interfered with." *Atlantic C. L. R. Co. v. Smith,* 107 Ga. App. 384 (6) (130 SE2d 355).

As the trial court expressly recognized, it would be harmful as an abstract, general rule if a juror actually witnessed, and understood the nature of, the defendant's arrest

for a crime. "There is nothing in which courts will go farther than in their protection of the jury box. Here every precaution is necessary for the proper and pure administration of justice. But in the jury box, if purity and integrity are not preserved, every principle of right and virtue dies. This court has been vigilant in protecting the jury from even the suspicion of injustice." *Salter v. Glenn, Duffield & Co.,* 42 Ga. 64, 80. Here, however, the juror had already heard sworn testimony, elicited by the defendant's counsel, concerning the offense for which the defendant was arrested (see Division 3 hereinabove) and could reasonably assume that the defendant would be arrested for this offense.

The defendant's counsel, as movant, had the burden of proving not only that the arrest took place in the vicinity of the juror, but also the probability that the juror saw, heard and understood what was occurring and in the light of particular circumstances was prejudiced thereby. "When the knowledge which a person may have had is material to a judicial proceeding, this is a fact to be proved as any other fact, and a wide range of proof is admissible in this respect. It differs from physical objects and phenomena in that it is a state of mind, which, like belief or consciousness, cannot be seen, heard, or otherwise directly observed by other persons. It may be evidenced by the affirmative statement or admission of the possessor of it. If he is silent or says he did not have such knowledge, it may be evidenced in other ways, by matters which are collateral. Knowledge may be established by proof of facts and circumstances warranting an inference thereof by the jury; and, for such purpose, evidence of the situation of the parties and the attendant facts and circumstances is admissible." 29 AmJur2d 405, Evidence, § 356.

Was the statement in his place by defendant's counsel such evidence as would have proved that the juror was aware of the nature of the situation and was prejudiced thereby. In our opinion, it was not. The record is silent as to these two critical areas. As noted previously in Division 3, the members of the jury had heard testimony elicited by

the defendant's counsel on cross examination regarding the offense for which the defendant was arrested. Under the circumstances it was incumbent upon the defendant to affirmatively show not only that the event took place, but that the juror was aware of the situation and was prejudiced thereby. It is urged that the occurrence is prejudicial per se. For the reasons previously given defendant's contentions are without merit in this case.

Let us assume arguendo that the defendant's contentions are correct. After overruling the defendant's motion for mistrial, the court instructed the jury that they must decide the case "upon evidence produced before you here in the courtroom; you must not be influenced by anything heard or seen . . . outside the courtroom." Counsel for the defendant failed to renew his motion for mistrial. "A ground of enumerated error based on the denial of defendant's motion for mistrial is without merit where the judge instructed the jury not to consider the testimony which brought on the motion and counsel thereafter failed to request further instructions or renew the motion for mistrial. [Cit.] The rule requiring renewal of a motion for mistrial following corrective instructions to the jury still obtains in the trial of criminal cases though it has been eliminated in civil cases by CPA § 46 (b) (Ga. L. 1966, pp. 609, 655; *Code Ann.* § 81A-146 (b))." *Lane v. State,* 118 Ga. App. 688 (3), supra.

■ The evidence amply authorized the verdict and, none of the enumerated errors being meritorious, the trial court did not err in entering judgment thereon.

*Judgment affirmed. Bell, C. J., Hall, P. J., Eberhardt, P. J., Pannell, Deen, Quillian and Clark, JJ., concur. Evans, J., dissents.*

EVANS, Judge, dissenting. Defendant was on trial in the Superior Court of Fulton County for possession of illegal drugs. When court recessed for the day, while still in the courthouse building, but outside the courtroom, two officers seized and arrested defendant, in the presence of one of the jurors and there stated to him, in substance: "You are un-

der arrest for possessing marijuana or hashish." The arresting officers then locked defendant in the jail and kept him there all night.

Defendant's counsel immediately went to the judge to complain of this improper conduct, but was told by the judge to wait until the next morning when State's counsel could be present. On the following morning, outside the hearing of the jury, and in presence of State's counsel, counsel made a statement to the court, in his place, as counsel for defendant, as to what had transpired and moved for a mistrial. The court accepted the statement as true, but overruled the motion for mistrial, and took no corrective action whatever towards the two arresting officers. They were not brought before the court to explain their conduct, and they were not reprimanded. The court simply stated, outside the hearing of the jury: "I do not really think the man should have been arrested in the presence of the juror."

The court further stated that he had previously instructed the jury not to read, look at, or listen to anything concerning the case outside the courtroom; and that he would instruct the jury in his charge that their judgment should be based solely on what occurred in the courtroom; and if any of them heard any conversation by the defendant or anyone else outside the courtroom, that should under no circumstances influence them under all the evidence in the case.

There was no denial of the occurrence as stated to the court by defendant's counsel, and no countershowing of any nature. *There was no objection to defendant's counsel not being under oath.* The trial court received the statement and accepted it as true.

Defendant's counsel urged as grounds for mistrial that his client's right of a fair and reasonable trial was prejudiced; that counsel did not feel the enormous burden thus placed on defendant could be overcome; that he felt he would have to defend against a crime not charged in the indictment; that he felt that any presumption in the juror's

mind as to innocence had been erased by the seizure and arrest of defendant in the presence of the juror; that although his client was out on bond, last night he was put in jail where he was required to remain overnight.

The timing of the arrest deserves special comment and attention. Was this arrest of defendant in the presence of the juror deliberately staged? A woman had called the office of the District Attorney on the day before the trial, and claimed she had information which would connect defendant with possession of marijuana. This was a separate and distinct occasion from that for which he was placed on trial on the following day. She said she talked with Mr. Weller in the District Attorney's office about the matter. Mr. Weller was the Assistant District Attorney who represented the State in the prosecution which began the following day (the case sub judice).

The questions naturally arise as to why defendant was not arrested on the same day, before his trial began? Or why was he not arrested on the following morning, before his trial began? Why was it necessary to arrest him *after the trial had begun in the presence of a juror, and why was it necessary to restrain him all night long in jail?* Why did not the arresting officers wait until his trial ended before making the arrest?

Still other questions arise. Why did the trial court fail to punish these officers for interference with an essential party to a case after trial had begun? Why did he not in the strongest possible way, let the jury know that the court did not sanction such conduct? Suppose they had arrested a juror, or the assistant district attorney, and kept him in jail all night, would the trial judge have closed his eyes to the offense without punishing the offenders? Once the trial got underway, every party thereto, including *parties, jurors* and *attorneys,* were each and all entitled to the full protection of the court, to the end that the trial would not be improperly interrupted. The defendant was as much an essential part of the trial as were the jurors, or the district attorney, or the trial judge. What would happen to orderly process

and orderly trials if the trial court allows jurors, or the district attorney, *or the defendant,* to be arrested on a new charge, in the presence of the jury, and imprisoned all night long in the middle of a trial?

And although the trial court was vested with full and complete power to protect the trial and all parties thereto (*Code* § 24-104 (1) (4)), by punishing for contempt those who interfered therewith, here the trial court did absolutely nothing to the two arresting officers for their gross misconduct.

And let it be noted that defendant was not charged with committing a capital felony, which might have induced him to flee the country; he was simply charged with another case of possessing marijuana.

In Wood v. Georgia, 370 U. S. 375 (82 SC 1364, 8 LE2d 569) it was held that the court had a right to conduct its business in an untrammeled way; and power to punish for contempt any conduct that tends to interfere with the discharge of these functions. In *Richardson v. State,* 43 Ga. App. 229 (158 SE 369), this court held that the wilful attempt to improperly influence a person drawn as a juror is contempt of court.

Were the two arresting officers trying to improperly influence the juror by their conduct? The trial judge made no investigation, although the circumstances on their face gave rise to strong suspicion that such may have been their motive.

The State's brief is of very little help on this question. It is argued that the defendant did not renew his motion for mistrial, but of course, under the circumstances there was no opportunity and no duty to renew such motion. The court simply announced his reasons for his ruling *and then. overruled the motion.* Defendant's counsel was thus deprived of any opportunity to renew his motion. A trial court assuredly would not take kindly to a renewal of a motion for mistrial immediately following the overruling of the first motion; and doubtless would have sharply reprimanded counsel had he made a renewal of a motion for mistrial

immediately following the overruling of his first motion for mistrial. The case of *Lane v. State,* 118 Ga. App. 688 (3) (165 SE2d 474) cited by the majority is not in point here.

The only other argument advanced on the point is that the defendant did not object to the jury dispersing, and therefore, took his chances on the jury seeing or hearing improper acts. It is illogical to suggest that defendant was required to expect that he might be arrested in the presence of a juror, and that his consenting to dispersal waived his right to object to such misconduct.

In *Cox v. State,* 165 Ga. 145 (139 SE 861) the Supreme Court holds it reversible error to introduce evidence of a separate crime; and in *Bacon v. State,* 209 Ga. 261, 262 (71 SE2d 615), Justice Hawkins very ably discussed this question, holding it reversible error to introduce proof of defendant's guilt of three other charges of burglary, while he was on trial for a separate charge of burglary.

Only one juror saw and heard these things, but one is enough. In *Downer v. State,* 10 Ga. App. 827 (3) (74 SE 301) one juror only heard a third person denounce a witness for the State as having falsified, and it was held: ". . . this denunciation had presumptively an effect on the mind of the juror, detrimental to the accused; and this presumption was not fully rebutted by the affidavit of the juror that it did not influence his finding . . . Another trial should have been granted."

In *Styles v. State,* 129 Ga. 425, 429 (59 SE 249, 12 AC 176) the Supreme Court holds: "Perfect impartiality in the juror is the object of the law. Anything not legitimately arising out of the trial of the case, which tends to destroy the impartiality of the juror, should be discountenanced. . . . Verdicts should be the result of calm deliberation, founded upon the law and evidence. The accomplishment of that object can never be assured where irrelevant things which tend to destroy the impartiality of the jurors are allowed to creep into the trial."

In *Woolfolk v. State,* 81 Ga. 551, 558 (8 SE 724) the audience in the courtroom applauded the argument of State's

counsel, and some were heard to say "Hang him." The judge ordered one person so offending carried out of the courthouse. All the jurors made affidavits these things had no influence upon their minds. The court states (p. 560): *"We think the judge should have stopped the argument of the State's counsel then and there and ascertained the guilty parties, and should have punished them to the extent of the law. He should have taught them that the law was supreme; that the trial of a man for his life, however heinous the crime charged against him might be, was a serious and solemn thing, and that the law would not permit a mob to interfere, either by applause or by threatening and exciting cries."* (Emphasis supplied.) Needless to say, a new trial was ordered.

The majority opinion seeks to show the point was not properly presented in the trial court. It asserts that defendant's counsel *stated in his place* but was not sworn as a witness. To "state in his place" is completely adequate. See *Caldwell v. McWilliams,* 65 Ga. 99 (3), which holds that to "state in his place" is sufficient, but also states (p. 101), "In this case they were received *without objection* and it would be too late now to raise it [objections]." Absolutely *no objection* of any kind was made in the trial court to the statement of defendant's counsel in the case sub judice. On the point of "stating in his place" by counsel for a party, this is also held to be sufficient in the case of *Whitehead v. State,* 96 Ga. App. 382 (1) (100 SE2d 139). This case is quite similar to the case at bar because it also involved a recess of court, and occurrences at night. Certain shots were fired in the direction of defendant's house, and these circumstances were stated to the court by defendant's counsel on the following day. Also see *Mims v. Hardware Mut. Cas. Co.,* 82 Ga. App. 210, 213 (60 SE2d 501).

For cases which hold that where a statement is received as evidence, *without the formality of an oath, unless objection is then and there made, this constitutes a waiver* of the oath, see the following cases, to wit: *Smith v. State,* 81 Ga. 479 (2) (8 SE 187); *Rhodes v. State,* 122 Ga. 568 (1) (50 SE

361); *Southern R. Co. v. Ellis,* 123 Ga. 614 (2) (51 SE 594); *Morgan v. State,* 28 Ga. App. 358 (2) (111 SE 72); *State Bar v. Ellis,* 116 Ga. App. 721, 728 (158 SE2d 280); *Niagara Fire Ins. Co. v. Williams,* 1 Ga. App. 603, 604 (57 SE 1018); *Reagan v. Bethlehem Lodge,* 47 Ga. App. 430, 431 (170 SE 536); *Neidlinger v. Mobley,* 76 Ga. App. 599 (1) (46 SE2d 747).

The majority opinion cites *Kellar v. State,* 226 Ga. 432 (2) (175 SE2d 654), as a "similar case" where the unsworn statement of defendant's counsel was insufficient to warrant a mistrial. Please consider that case for a moment. There, counsel for defendant moved for a mistrial because defendant was brought into court while manacled. But the court said, *"I didn't see him handcuffed"*—thus rejecting the statement of counsel as being untrue; whereas in the case sub judice *the court accepted counsel's statement as true,* and said, "I do not think really that the man should have been arrested in the presence of a juror." The judge was the trior of fact, and his decision was binding. The case cited by the majority is not applicable.

The majority opinion asserts that: "Since counsel chose to rely on his unsworn statement rather than avail himself of some form of evidence, the trial judge did not abuse his discretion in denying the motion for mistrial." Surely the majority is fully cognizant that *the trial judge in the case sub judice did not exercise his discretion by disbelieving the occurrence took place.* To the contrary, he fully believed it occurred, but made it crystal clear that *his discretion was being exercised on the basis that he could cure the harm thus done by charging the jury to disregard it and not be thereby influenced.* The majority's statement above is therefore inappropriate.

The majority opinion contends defendant's counsel had the burden of proving the probability that the juror saw, heard and understood what was occurring. The occurrence was shown to have taken place *in the juror's presence.* What more is needed? The law presumes this juror to be "of ordinary intelligence and laboring under no physical

defect or disability which rendered her incapable of appreciating the situation." *Southern R. Co. v. Cabe,* 109 Ga. App. 432, 439 (136 SE2d 438). The State had every opportunity to prove—if it could have done so—that the witness did not see or hear the occurrence, yet it took no action in this respect. The record shows that actually no controversy existed in this regard, in that State's counsel simply stated: "Your Honor, *I don't know* that the juror actually heard or saw what went on at the time of the arrest . . . *my understanding is* that . . . may have been one [juror] behind in the restroom, but there is a grave question as to whether or not he even saw what was going on or knew what was going on or heard it." [Tr. 116-117] (Emphasis supplied.) This misses the mark by far as to creating an issue on this point. It is completely irrelevant as to whether State's counsel, *knew or did not know* of the occurrence; and it is likewise unimportant as to what his *understanding* was, as he significantly did not give the facts upon which his understanding was based. Suffice it to show that these facts were related by defendant's counsel to the court (and the court accepted them as true), to wit: "Mr. Clyatt was detained by two officers *in the presence of one of the the jurors* . . . and stated that he was under arrest for marijuana or hashish . . . I feel as a result of *the arrest of Mr. Clyatt in the presence of a juror* that it will prejudice Mr. Clyatt's right to any fair and reasonable trial." (Emphasis supplied.) I repeat that the trial court accepted this statement as true. Defendant was not required to introduce the testimony of the juror to show whether the improper conduct committed in her presence caused bias or prejudice to rest upon her mind against the defendant. The law presumes that the juror is prejudiced by improper conduct in his presence; and the juror's affidavit will not overcome this presumption of prejudice. See *Downer v. State,* 10 Ga. App. 827 (3) (74 SE 301).

Finally, the majority opinion urges that "moreover, whatever harm may have resulted was remedied by the judge's appropriate instructions." Not so! This was damage that

could not be eradicated by a charge of the court, no matter how strong! But the language charged made no specific reference whatever to the transaction which the lady juror had observed, and was as follows: "Now, Ladies and Gentlemen of the jury, I want to instruct you that you must decide this case or these four cases against this defendant upon the evidence produced before you here in the courtroom. You must not be influenced by anything heard or seen concerning this case, if such was heard or seen by you, nor anything heard or seen with respect to this defendant that may have occurred outside the courtroom. If anything concerning the case or concerning this defendant came to your attention outside the courtroom, in other words, Ladies and Gentlemen, the evidence that must be considered in the case is what is produced right here on the witness stand and as exhibited before you and not anything else that you may have heard or seen at any other place concerning this case or concerning this defendant; if you heard or had seen such it will not be considered by you in this matter."

Actually, the charge given, instead of correcting the damage, was quite harmful to the defendant. It made no mention of his being arrested, and did not instruct the jury not to consider the conduct of the arresting officers, but stated: "You must not be influenced by . . . anything heard or seen *with respect to this defendant* that may have occurred outside the courtroom." The trial judge should have spelled it out, instead of leaving the jury *to wonder what misconduct the defendant might have committed* outside the courtroom during the trial.

But, to repeat, a charge of the court, no matter how·specific, could not have cured the damage that had been done the defendant, when he was arrested on a separate charge of illegal possession of drugs in the presence of a juror, as to which the wrongdoers received no condemnation—not even "a slap on the wrist"—to indicate the court's disapproval of such high-handed and improper conduct.

The majority approvingly quotes from the statement by State's counsel during the trial, to the effect that defend-

ant's counsel had elicited evidence during the trial as to defendant's connection with drugs and that the juror would reasonably assume an arrest for marijuana possession after evidence thereof had been elicited during the trial by defendant's counsel. This is a non sequitur and is not in consonance with the record. The testimony referred to *did not at any time mention marijuana or any other illegal drug.* The witness testified as to seeing defendant with a brown bag, which she later recovered and that it had *some kind of drug* in it, but she did not know what kind of drug. The bag was brought to court but *no witness ever testified that it was marijuana or an illegal drug.* It will not be presumed that it was an illegal drug. The harm done defendant was in arresting him on a new charge of violation of the law by possessing drugs, and so stating, in the presence of the juror; thus letting the juror know that the State regarded it as an illegal drug, and that defendant's connection with it was such as to authorize his being arrested therefor. Neither defendant nor his counsel could have anticipated this reprehensible and unwarranted conduct in the presence of the juror.

Therefore, I respectfully dissent from the majority opinion, and vote to reverse the trial court for the reasons above set forth.