42962.   STATE BAR OF GEORGIA v. ELLIS.

ARGUED JULY 10, 1967—DECIDED NOVEMBER 10, 1967—
REHEARING DENIED NOVEMBER 22, 1967—

*Mallory C. Atkinson, Nolan B. Harmon,* for appellant.

*Hugh J. Martin,* for appellee.

WHITMAN, Judge. ■ A summary review of the entire disciplinary procedure is necessary in order to place each of the appellee's exceptions in a proper perspective.

To initiate a disciplinary proceeding a complaint must issue. The board may initiate a complaint on its own motion. Rule 4-202 (b). Or a complaint may be drawn by the board based on charges coming from without, in which case the complaint must be verified by the complainant. Rule 4-202 (a).

The board is empowered by the rules to refer any complaint which does not appear to them to be frivolous or patently unfounded to a grievance tribunal within the judicial circuit wherein the member complained against resides. The tribunal is appointed by the board and, according to the rules, is composed of one member from the board, as chairman, and two members of the State Bar of Georgia residing in the same judicial circuit as the member complained against. Rule 4-203.

It is the duty of the grievance tribunal to make a preliminary investigation, at which the member may be heard in person or by affidavit, to determine if probable cause exists for the lodging of a formal complaint. If none is found, the grievance tribunal is to recommend to the board that the complaint be dismissed. Rule 4-204.

If probable cause is found to exist or if the board disapproves a recommendation for dismissal of the complaint, the grievance tribunal must prepare a formal complaint specifying with reasonable particularity, the act complained of and the grounds for disciplinary action. It must also include the names and addresses of all witnesses known to the tribunal. A copy of the formal complaint must be served upon the member complained against in the manner specified in the rules. Rule 4-205.

After service of the formal complaint the grievance tribunal must arrange a preliminary meeting in the nature of a pre-trial at which the member complained against may file defensive pleadings and shall elect: (a) To have the grievance tribunal hear and decide all issues of fact as well as law, or (b) to have any material issues of fact determined by a jury in the superior court of the county of his residence. Rule 4-206.

If it is elected to have the complaint tried before the grievance tribunal without a jury, as was done in the present case, the tribunal proceeds to hear the case. The hearing must be stenographically reported and transcribed. Rule 4-207.

When the hearing is complete the tribunal is required to make a report to the board. The report must contain: (a) A complete transcript of the evidence adduced; (b) the tribunal's findings of fact; (c) the tribunal's conclusions of law; and (d) the tribunal's recommendations as to what disciplinary action should be taken, if any. Rule 4-210.

The board then considers the record in its entirety, including the recommendations of the tribunal and makes a determination as to what disciplinary action shall be taken, if any. The tribunal's findings of fact are not binding upon the board and such findings may be reversed on the basis of the record. There can be no de novo hearing before the board except by unanimous consent of the board and the member complained against, but the board may grant rehearings, or new trials, or hear additional evidence, for such reasons, in such manner, on such issues, and within such time as it may prescribe. Rule 4-211.

The board then transmits its own findings and the record in the case to the clerk of the superior court of the county in which the lawyer complained against resides and unless exceptions to such findings are made within thirty days, the findings automatically become the judgment of the court. Such exceptions can be addressed to matters of law only, and the findings of fact are conclusive if supported by any evidence. A decision of the superior court on such exceptions may be appealed to the Court of Appeals as in other cases. Rules 4-212 and 4-213.

Before entering upon their duties each member of the board and each member of the tribunal are required to subscribe to an oath to be administered by any person authorized to administer oaths. The contents of the oaths are set forth in the rules. Rule 4-215 (a).

The board, tribunal, and member complained against all have the right to have subpoenas issue for the attendance of witnesses or to require the production of books and papers, and to take depositions all in the same manner and under the same provisions as now done under the laws of Georgia in civil suits. Any member of the board or tribunal may administer oaths and affirmations and may issue any subpoena provided for. Rule 4-215 (b).

All hearings on complaints and charges against members of the bar before grievance tribunals are required to be held in the county of residence of the member complained against, unless he otherwise agrees. The board and tribunals upon the hearing of all complaints are required to have evidence and proceedings taken and transcribed. Rule 4-215 (c).

"In all proceedings the burden of proof shall be on the State Bar of Georgia and the procedures and rules of evidence applicable in civil cases shall apply except that the quantum of proof required shall be beyond a reasonable doubt." Rule 4-215 (f).

■ Considering the appellee's exceptions, set forth above, the first eight address themselves to certain alleged irregularities and variations in the prescribed procedure leading up to a hearing which is to be had on the formal complaint. All eight exceptions are addressed, in the final analysis, to the *sufficiency* of the formal complaint which has resulted and upon which complaint the hearing will be held.

Rule 4-206 provides that a preliminary meeting, in the nature of a pre-trial, be held by the grievance tribunal after service of the formal complaint, at which meeting the member complained against *may challenge the legal sufficiency of the complaint.* There appears in the record a memorandum of this meeting which, among other things, states the following: "Ellis stated that he had no challenge to the legal sufficiency of the complaint, that he raised no question concerning the qualifications and impartiality of any member of the tribunal, and that he elects to have the tribunal hear and decide all issues of fact as well as law." This memorandum is signed by the chairman of the grievance tribunal and is approved by Ellis.

The record also contains the transcript of the hearing subsequently held by the grievance tribunal. Although the rules provide that the member complained against may be represented by counsel at all stages of the proceeding, Rule 4-205, the record shows that Ellis represented himself at the hearing. The record of this hearing shows that no defensive pleadings, objections, motions, or pleas to the proceeding were entered as might have been done since the proceeding was subject to the procedures ordinarily applicable in civil cases. Rule 4-215 (f). Rather,

the hearing proceeded to its conclusion and appellee sought for the first time on review in the superior court, which is an appellate stage, to correct the alleged deficiencies without having preserved any right to do so. With no objections or exceptions having been taken when the opportunity was available and consequently no rulings invoked, nothing was presented for review. *Burtine v. State,* 18 Ga. 534 (1) ; *Loomis v. State,* 78 Ga. App. 336, 341 (51 SE2d 33) ; *Crider v. State,* 114 Ga. App. 522 (1) (151 SE2d 791). See generally 4 CJS 665, Appeal & Error, § 228 et seq.

The court is of the view that the appellee waived the right to raise those matters which are the subject of his first eight exceptions, (1) by his statement that he had no challenge to the legal sufficiency of the complaint, and (2) by failing to object before the matter had reached the appellate stage. It was error to sustain the first eight exceptions.

■ We next consider the ninth and tenth exceptions. The record shows that an affidavit sworn to by appellee was introduced into evidence without objection. In addition, without being sworn but without objection, appellee made a statement and answered questions propounded with regard to certain statements in his affidavit. Omission to swear a witness is not a ground for relief where his testimony is offered and no objection is made. *Rhodes v. State,* 122 Ga. 568 (1) (50 SE 361).

The contentions in the ninth and tenth exceptions that there was no compliance with the rules of evidence or procedure applicable in civil cases are unfounded. No instance, except the one just discussed, has been called to our attention.

There remains for consideration the assertion that the rules as to burden of proof and quantum of proof were not invoked. The formal complaint lodged against Ellis was for failure to account for trust property held by him in a fiduciary capacity. Rule 4-102 (k). In practically every jurisdiction the misappropriation of the funds of a client received in a professional capacity either by failing to pay over money collected or by appropriating to his own use funds entrusted to his care, e. g. by mingling them with his own funds, is a ground for suspension or disbarment, provided the attorney acts in bad faith or with a

fraudulent purpose. 7 CJS 746, Attorney and Client, § 23 (b) (3). An attorney is never justified in making personal use of the funds of his client and the fact that he intended to repay or ultimately did make restitution is of no consequence except perhaps in mitigation. 7 AmJur2d 797, Attorneys at Law, § 36.

The pertinent facts found by the grievance tribunal and adopted by the board are as follows: Early in March, 1965, Fickling & Walker, Inc., employed Ellis in his professional capacity to represent that firm in the handling and closing of a real estate transaction in which Fickling was making a loan of $15,600 to the purchaser. A check in that amount was sent by Fickling to Ellis along with a loan closing instruction sheet which required, among other things, that all liens be paid at the time of closing. This included a first lien held by the Equitable Life Assurance Society in the amount of $10,495.08. The $15,600 check was deposited to the account of Harry A. Ellis, Jr., Trustee. The loan was closed on March 12, 1965, with the loan closing statement signed by Ellis showing a disbursement of $10,495.08 to Equitable. The facts recited thus far are supported by the affidavits of Ellis and Robert W. Hearn, Jr. (an officer of Fickling), the loan closing statement, and the $15,600 canceled check of Fickling.

The grievance tribunal next found as fact that the certification by Ellis that the closing statement was a "complete, true and correct account of funds received and disbursed by me in connection with the above payment" was false in that no disbursement had been made to Equitable and that Ellis knew it was false when he signed it. These particular findings were based on circumstantial and partially conflicting evidence which is set forth in a footnote to the findings and which reads as follows: "Note 1 . . . Ellis swears that he drew a check for $10,495.08 to Equitable on March 12, 1965, although he cannot swear that he mailed it. However, Equitable never received such a check, nor has such a check ever been found. Ellis has no copy of a cover letter to Equitable relating to such a check. Ellis' check stubs [Exhibit] (S-10) appear to have been altered, and they contain many inaccuracies and irregularities. Stubs Nos. 1064 and 1065 bear dates of March 4th and 5th, respectively, stub No. 1066 is

blank, and stub No. 1067, which purports to relate to the check written to Equitable on March 12th, is dated March 12. However, the next three check stubs thereafter (Nos. 1068, 1069 and 1070) are dated March 9th, and the fourth stub thereafter (No. 1071) is dated March 10th. Canceled checks Nos. 1068, 1069 and 1070 show on their reverse side that they were deposited in the National City Bank on March 10th, and Check No. 1071 was so deposited on March 11th, which indicates that their stub dates are correct. In addition, the balance shown after stub No. 1065 is $6,493.36; stub No. 1067 purports to represent a check of $10,495.08; yet the balance shown after stub No. 1067 remains the same, i.e., $6,493.36. Moreover, opposite stub No. 1064 is an alleged deposit on 3/8/65 of $4,610.00, but the bank ledger sheet [Exhibit] (S-3) contain no such deposit. Ellis was unable to explain these irregularities, and therefore no credence is placed in stub No. 1067."

Continuing with the findings of fact, the board found that on March 30, 1965, Ellis did write and mail a check to Equitable against his trustee account in the amount of $10,495.08. This check was deposited by Equitable on April 14, 1965, and it was then notified of its rejection because of insufficient funds. Ellis was likewise notified. Equitable then again on April 22, 1965, redeposited the check and it was again rejected for insufficient funds.

On May 3, 1965, Equitable returned the check to Ellis and called upon its original debtor for payment. On May 21, 1965, approximately 10 weeks after the real estate closing, Ellis paid the Equitable lien in full with money borrowed for that purpose.

On March 30, 1965, when the check was written, the balance on deposit in the Harry A. Ellis, Jr., trustee account was $7,726.06 and at no time between March 30, 1965, and May 21, 1965, did Ellis have on deposit sufficient funds to pay such check, although he did during this period issue checks on his trustee account for "office rent," "salary," "law books," "Harry A. Ellis, Jr., Campaign Fund," "parking lot rent" and other personal expenses.

All of the aforementioned findings regarding the March 30, 1965, check, the status of the trustee account and its utilization for personal expenses, and the ultimate payment of the Equitable

lien are supported by uncontradicted evidence consisting of bank ledgers of the Ellis Trustee account, Ellis' check stubs, Ellis' canceled checks, the affidavit of Ellis, and the testimony of Gary H. Harvey, an employee of the Equitable Life Assurance Society.

The court is of the view that the findings were amply supported by the evidence and that such findings and evidence support the board's ultimate conclusion, beyond a reasonable doubt, that there was a failure to account for trust property held by Ellis in a fiduciary capacity. There is simply no basis in the record for the assertion that Rule 4-215 (f) regarding burden and quantum of proof was not observed in this case.

It was error to sustain the ninth and tenth exceptions.

■ All of the exceptions discussed above were timely filed in the superior court. However, after a hearing on these exceptions in the superior court, the trial judge entered an order remanding the case to the State Disciplinary Board "for any further consideration they wish to take in said matter." Pursuant to this order the board reported back to the court that: "The Board does not wish to take any further action in the matter in any wise at variance from the Board's [previous] determination. . . ." The appellee then filed "Renewed Exceptions and Additional Exceptions" which renewed the ten exceptions hereinabove discussed and added three additional exceptions.

Under the rules, exceptions must be filed within thirty days from the time the board's findings are filed in the superior court (Rule 4-212) unless the board extends the time for filing exceptions, in which case exceptions must then be filed within the extended time. The time required to act upon motions for rehearing, new trials or other matters pursuant to Rule 4-211 may require such time extensions.

Had the board revised its original findings or made additional findings pursuant to the remand, there may have been some basis for filing additional exceptions. But the board did not do this in the present case, and therefore the additional exceptions were not timely and could not be considered by the trial judge. Accordingly, it was error to sustain the additional exceptions.

The order of the trial judge sustaining the Renewed and Additional Exceptions of the appellee is reversed with direction that

the Report of Findings by the State Disciplinary Board filed on the 8th day of February, 1966, be made the judgment of the Superior Court of Floyd County.

*Reversed with direction. Bell, P. J., and Pannell, J., concur.*