**In the Matter of Richard Allen JAMES, Respondent, A Member of the Bar of the District of Columbia Court of Appeals.**

**No. M–93–81.**

District of Columbia Court of Appeals.

Argued May 26, 1982.

Decided Oct. 21, 1982.

Martha J. Tomich, Assistant Bar Counsel, with whom Edwin Yourman, Deputy Bar Counsel, Washington, D.C., was on the brief, for the Bd. on Professional Responsibility.

William F. Krebs, with whom Goeffrey P. Gitner, Washington, D.C., was on the brief, for respondent.

Before NEWMAN, Chief Judge, and MACK and PRYOR, Associate Judges.

NEWMAN, Chief Judge:

The Board on Professional Responsibility found that respondent had violated several disciplinary rules in connection with two matters involving different clients. With regard to one case, the Board found that respondent had improperly converted to his own use funds intended by the client to be paid to a third party in settlement of a legal dispute, and that this constituted, *inter alia,* "conduct involving dishonesty, fraud, deceit, or misrepresentation" in violation of DR [Disciplinary Rule] 1–102(A)(4). In the other case, the Board concluded that respondent violated DR 5–104(A) by failing to take appropriate steps to protect his clients from a potential conflict of interest that arose when he both drafted and entered into a real estate transaction with them, notwithstanding respondent's lack of fraudulent intent. Respondent challenges these findings and conclusions of law. He also asks us to reject the finding of one violation on the ground that he was not given adequate notice of the charge. A remand for reconsideration of

the sanction is sought because respondent's opportunity to present mitigating evidence was allegedly inadequate. Finally, he contends that the Board's recommended sanction is unwarranted. We reject these challenges and adopt the recommended sanction of a two year suspension from the practice of law.

## I. FACTS

### A. *The Coverdale Case* (No. 319–79)

In September 1978 respondent was retained by Louvenia Coverdale to represent her as a defendant in a personal injury action. In October 1979, Mrs. Coverdale agreed to pay the plaintiff $1,250 in settlement of the dispute, and the suit was dismissed. Respondent billed her $1,500 for his services. She proposed to satisfy her obligations in monthly installments of $400, with half of each payment going to the plaintiff to satisfy the settlement, and half to respondent in payment of his fee. After the plaintiff rejected this arrangement, Mrs. Coverdale proposed to respondent that the full amount of each installment be paid to the plaintiff until the settlement was satisfied, and that subsequent payments be applied to the fee. According to Mrs. Coverdale's testimony, which was accepted by the Hearing Committee and the Board, respondent accepted this arrangement and promised to implement it on her behalf.[1] Thereafter, Mrs. Coverdale gave respondent $350 in November 1979, and payments of $400 each in the succeeding three months. However, respondent made no effort to transfer funds to the plaintiff, and, without informing the client, deposited the payments in his personal professional account.[2]

In December 1979 or January 1980, the plaintiff's counsel informed respondent that he would seek judicial relief from the order of dismissal. Respondent then advised Mrs. Coverdale to suspend her payments until the court acted on the plaintiff's motion. On April 30, a hearing on the motion was held. Respondent told the court that his client had paid only $350 toward the settlement, and had not sent him any funds for three months. He failed to inform the court that payments were suspended on his own advice, and stated instead that his client was unable to pay any faster. He concurred in plaintiff's contention that Mrs. Coverdale had breached her agreement, and suggested that the plaintiff could attach her property to enforce it. The court stated that the motion would be denied if the full $1,250 was paid immediately. Respondent neither informed the court that his client had already paid him an amount sufficient to cover the settlement, nor offered to pay it forthwith. Instead, he requested fifteen days to *attempt* to raise the money. The court then granted the motion setting aside the settlement.

Respondent told Mrs. Coverdale that the reason the settlement was set aside was that the entire amount had not been paid within fifteen days of the settlement. He failed to inform her that the motion would have been denied if the full amount had been paid as of the hearing date.

The Hearing Committee found that respondent had violated several disciplinary rules in connection with the Coverdale matter: DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(5) (conduct prejudicial to the administration of justice); DR 6–101(A)(3) (neglect of a legal matter); DR 7–101(A)(1)–(3) (intentionally failing to seek the lawful objectives of the client, failing to carry out a contract for legal services, and prejudicing the client during the course of the professional relationship); and DR 9–102(A) (failing to maintain client funds in an account separate from his own professional account). Only the finding of dishonesty and misrepresentation pursuant

---

1. As explained in Part II, the fact that respondent contradicted his client's testimony in some respects does not vitiate the fact that substantial evidence supporting the Board's finding exists. Accordingly, we evaluate the evidence in a light favorable to petitioner.

2. Following an inquiry by Bar Counsel, the amount of the February payment was deposited in respondent's client escrow account.

to DR 1–102(A)(4) was challenged before the Board. The Board accepted the Hearing Committee's findings.

### B. *The Scott Case* (No. 312–79)

In November 1979, Walter and Saundra Scott retained respondent to aid them in renegotiating a lease on a building they owned, and in selling the property. Due to substantial losses incurred on the building, the Scotts were eager to dispose of it. After efforts to sell to third parties had failed, Mr. Scott suggested that respondent buy the property. Respondent then drafted two documents. The first was a contract to sell the building to respondent for $40,000. The second suggested that the Scotts would retain an equitable interest and that the sale proceeds would be applied to the maintenance of the property, after satisfaction of existing liens. Upon subsequent resale, the net proceeds would be divided equally between respondent and the Scotts. However, the contract did not expressly require respondent to sell the building, and did not establish time limits for its rehabilitation or sale. Neither did it establish whether the Scotts would be entitled to any part of future rents collected, or provide for contingencies that might interfere with the performance of the arrangement, such as respondent's death.

Respondent reviewed the documents with the Scotts for about an hour, after which the contracts were executed. It was agreed that the second agreement would not be disclosed to third parties, so that the tenant would not learn of the true nature of the sale. Respondent's share of the net proceeds would be in lieu of a prior hourly fee arrangement. Respondent subsequently testified that he had suggested that the Scotts consult independent counsel, but they could not recall such a suggestion. Due to difficulties in obtaining necessary approvals from the District of Columbia Rental Accommodations Office, the contracts were never carried out.

The Hearing Committee concluded that respondent violated DR 5–104(A) by failing to make the "full disclosure" necessary to protect his clients from the conflict of interest inherent in a contract in which he had a personal interest differing from that of the clients. The Board later concurred in that conclusion, finding that respondent neither "review[ed] with his clients in considerable detail the nature of the proposed agreement" nor "discussed in any detail . . . the nature of the potential conflict of interest." Board Report and Recommendation at 12.

### II. FINDINGS OF DISHONESTY, FRAUD, DECEIT, AND MISREPRESENTATION

The sole substantive issue before us regarding the Coverdale case concerns the Board's finding of conduct involving dishonesty, fraud, deceit, and misrepresentation, which the Board found established a violation of DR 1–102(A)(4). We are required to accept that finding unless it is unsupported by substantial record evidence. D.C.App.R. XI § 7(3).

■■ Testimony supporting a finding of dishonesty, etc., is more than ample. The client testified that respondent had agreed to forward her monthly payments to a third party in order to satisfy a settlement agreement. Respondent admittedly failed to do so. Instead, he applied the payments to his own account, without so informing the client. He later misled a court about the payments his client had made for purposes of satisfying the settlement agreement. He subsequently misinformed the client as to the reasons for the court's setting aside of the settlement agreement. The scienter requisite to a disciplinary code violation can be inferred from respondent's conduct. *See Geffen v. State Bar of California,* 14 Cal.3d 843, 122 Cal.Rptr. 865, 537 P.2d 1225 (1975) (knowledge of employee's improper solicitations); *In re Vincent,* 347 N.E.2d 40 (Ind. 1978) (intent to prejudice or damage client). Thus there is substantial evidence of dishonest behavior in violation of professional standards. Respondent disputed much of this testimony, particularly as regards the nature of the agreement concerning the use of the client's monthly payments, but the Board is not required to accept his version of the events. The Hearing Committee

found the client's testimony to be credible, while that of respondent contained inconsistencies and was sometimes evasive. The Board acted well within the bounds of its authority in accepting this assessment. Accordingly, we conclude that the Board's finding of dishonest conduct, in contravention of DR 1–102(A)(4), was supported by substantial evidence.

### III. STATE OF MIND REQUISITE TO A VIOLATION OF DR 5–104(A)

Respondent's only challenge relating to the Scott case involves the finding that he violated DR 5–104(A), which provides:

A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of his client, unless the client has consented after full disclosure.

The principal issue is a question of law: whether an improper intent is an element of a violation of this rule. It is not disputed that respondent entered into the land transaction in good faith, without intending to defraud or overreach his clients, and that the transaction may have been in the client's best interest. Respondent argues that his misdeeds, if any, were unwitting and at most negligent. He argues that the rule must be applied on the basis of his "subjective understanding" and that, accordingly, his good faith is a defense.

■ We reject that contention. The Rule creates an unqualified obligation to provide "full disclosure" before entering a business transaction like that involved in the Scott case. The rule contains no words indicating that discipline may not be imposed except when scienter is shown. This contrasts with other Disciplinary Rules, which contain explicit scienter standards. *See, e.g.,* DR 4–101(B) ("[A] lawyer shall not *knowingly* . . . ."). The evident intent of DR 5–104(A) is not merely to deter and punish actual fraud against clients. That is already proscribed by other rules. Rather it is to ensure that clients get full disclosure on which to base their decisions in *every* case involving differing interests, including those in which the attorney is acting in good faith. Accordingly, we hold that failure to provide the full disclosure required by DR 4–101(B) constitutes a violation of that rule regardless of whether the attorney intended to defraud the client or acted with other improper motives. This conclusion is in accord with those reached in numerous other jurisdictions. *In re Weiner,* 120 Ariz. 349, 586 P.2d 194, 197 (1978); *People v. Denious,* 118 Colo. 342, 196 P.2d 257, 263, 266–67 (1948); *Committee on Professional Ethics v. Baker,* 269 N.W.2d 463, 466 (Iowa 1978); *In re Brown,* 277 Or. 121, 559 P.2d 884, 887–91 (1977); *In re Boivin,* 271 Or. 419, 533 P.2d 171, 175–76 (1975).

■ "Full disclosure" includes a clear explanation of the differing interests involved in the transaction and the advantages of seeking independent legal advice. It also requires a detailed explanation of the risks and disadvantages to the client entailed in the agreement, including any liabilities that will or may foreseeably accrue to him. However, in this case, the Board found that respondent failed to review in adequate detail both "the nature of the proposed agreement" and "the nature of the potential conflict of interest." The record is adequate to support the conclusion that the disclosure provided by respondent, including both the documents and the discussion of them, was inadequate to permit the clients to make a fully informed decision.

### IV. PROCEDURAL ISSUES

Respondent contends that his right to due process was violated by a failure to give him adequate notice of charges that ultimately formed the basis for the finding that he had engaged in conduct prejudicial to the administration of justice, in violation of DR 1–102(A)(5). He also alleges that the lack of notice contravened D.C.App.R. XI, § 7(2), which specifies that the charging petition "shall be sufficiently clear and specific to inform the respondent of the alleged misconduct."

Paragraph 10(b) of the Specification of Charges clearly put respondent on notice of the Disciplinary Rule with whose violation he was charged:

Respondent violated the following provisions of the District of Columbia Code of Professional Responsibility:

(b) Disciplinary Rule 1–102(A)(5) by engaging in conduct prejudicial to the administration of justice as alleged in paragraph 7;  .... [Specification of Charges, ¶ 10]

Paragraph 7 clearly identifies respondent's behavior at the hearing on the motion to set aside the settlement in the Coverdale case as the basis for the alleged violation. However, that paragraph does not mention false or misleading statements or omissions with regard to the payments made by his client.

On February 29, 1980, plaintiff filed a Motion for Relief From Order requesting the Court to set aside the settlement entered on October 15, 1979 and permit the plaintiff to proceed to trial. In opposing this motion on behalf of Ms. Coverdale, respondent represented to the Court that he had been unaware of the plaintiff's whereabouts. That statement was false and respondent knew or should have known that it was false. [Specification of Charges, ¶ 7.]

When respondent appeared before the Hearing Committee, he was informed of the Committee's concern about his statement and omission regarding Mrs. Coverdale's payments, and asked to respond to those concerns in a written memorandum after the oral hearing. Therefore, in order to prevail, respondent would have to establish both that he was not on adequate notice of the charges before the oral hearing, and that the opportunity to respond in written form was inadequate to satisfy due process.

■ We need not decide the merits of this issue,[3] however, because respondent has not preserved his right to raise it in this court. Respondent could have objected to the lack of notice during the proceedings before the Hearing Committee, or at any time thereafter. `He had several opportunities to do so, none of which he accepted. No objection or request for an additional oral hearing was made during the evidentiary hearing. Neither was the issue raised in the respondent's post-hearing brief, which addressed the merits of the Committee's charge. Nor did he raise the issue before the Board. Finally, there was no mention of the lack of notice as to the charged violation in respondent's exceptions to the Board Report and Recommendation as filed in this court. Under similar circumstances, courts have held the respondent to have waived the right to raise his objection on appeal. *Athearn v. State Bar of California,* 20 Cal.3d 232, 142 Cal.Rptr. 171, 172–73, 571 P.2d 628, 629–30 (1978) (Respondent waived right to review of commission's right to subpoena his bank records); *State Bar of Georgia v. Ellis,* 116 Ga.App. 721, 728, 158 S.E.2d 280, 285 (1968) (Respondent lost right of review when he attempted to correct alleged deficiencies for the first time at the appellate stage); *Committee on Professional Ethics and Conduct of the Iowa State Bar Association v. Roberts,* 246 N.W.2d 259, 260 (Iowa 1976) (Court rejects Respondent's contention that he was not provided timely notice of hearing because it was not urged before the commission); *In re Crane,* 400 Mich. 484,

---

3. We note, however, that the two cases principally relied on by respondent would not be dispositive of his claim. In *In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 1225, 20 L.Ed.2d 117 (1968), the charges against the attorney were amended to add a count based on a defense that the attorney had presented during his testimony. The Supreme Court held that "the absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges deprived petitioner of procedural due process." *Id.* at 552, 88 S.Ct. at 1226. However, as we explained in *In re Smith,* D.C.

App., 403 A.2d 296 (1979), *Ruffalo* rests on the premise that the amendment of charges created an impermissible trap since, at the time of the proceedings, the attorney could not have known that the defense he asserted would subject him to disbarment. Such a situation is not present in the case at bar. The instant case involves no amendment of charges. The issues involve the scope of the *original* charges and whether the Hearing Committee's statements to respondent regarding the matters of concern to them would suffice to vitiate any shortcomings in the charging document.

494, 255 N.W.2d 624, 626 (1977) (Respondent waived his demand for documents, witnesses, and bill of particulars because he did not bring it to the attention of the hearing panel or Grievance Board).

Our consideration of Board findings and recommendations is similar to our review of administrative agency decisions. *In re Dwyer,* D.C.App., 399 A.2d 1, 11 (1979). In the context of administrative appeals, we do not address objections that could have been, but were not raised prior to judicial review. *DeLevay v. District of Columbia Rental Accommodations Commission,* D.C. App., 411 A.2d 354, 358 (1980); *Dietrich v. District of Columbia Board of Zoning Adjustment,* D.C.App., 320 A.2d 282, 287 (1974); *John D. Neumann Properties, Inc. v. District of Columbia Board of Appeals and Review,* D.C.App., 268 A.2d 605, 606 (1970). The purposes of this policy are well known. First, when an issue is timely raised before the administrative tribunal, the problem may be corrected without the involvement of the appellate court, thereby avoiding a possible remand and subsequent appeal. Secondly, even when the complaining party does not get satisfaction from the administrative body, the appellate court's task is facilitated by the record of the agency's attention to the issue. Both of these considerations apply with comparable force in the context of disciplinary proceedings.[4]

We conclude that where respondent had a fair opportunity to raise the inadequacy of notice before the Hearing Committee and the Board, and failed to take advantage of it, he has waived his right to have that issue resolved in this court.

Respondent's other procedural objection is that he was denied an adequate opportunity to offer evidence in mitigation of his offenses, testimony that might have resulted in the recommendation of a lesser sanction. The right to present such evidence is provided in D.C.App.R. XI § 7.

At the hearing, the Chairman inquired about possible mitigation evidence:[5]

> I guess what I thought was we would defer any hearing on the issue of sanctions. At this time, do you know whether you would propose presenting any further witnesses on the subject of sanctions? [Tr. 200–01].

James responded as follows:

> ... I don't know, can I bring in 25 or 30 people who think I'm a good guy? You know, there are lots of them that think I am and lots of them that think I'm not. And as for my professional responsibility, I think it's aboveboard. [Tr. 201].

The Committee then asked Bar Counsel and respondent to address the issue of sanctions in their post-hearing memoranda, and specifically asked respondent to include any additional mitigating evidence therein. Respondent did not object to this procedure in any way or ask that he be allowed to present his mitigation evidence by means of oral testimony rather than written statements. Instead, he followed the procedure outlined and submitted testimonials to his integrity from six people. However, in his post-hearing memorandum, respondent included a request for an additional hearing on the following matters:

> (a) mitigating circumstances; (b) respondent's prior good record and lack of disciplinary complaints; (c) respondent's previous good reputation as an attorney; (d) the absence of evil or fraudulent intent related to any disciplinary infraction; and (e) respondent's willingness to admit any negligence or wrongdoing if such are found by this Committee. [Respondent's Post-Hearing Memorandum at 24].

The request was denied by letter of the Committee Chairman.

---

4. The fact that disciplinary actions are punitive does not alter the result. Even criminal defendants facing severe penalties may waive rights or objections by failing to assert them in a timely manner. *See, e.g.,* Super.Ct.Cr.R. 12(d) (failure to move for the suppression of evidence before trial constitutes a waiver).

5. Respondent also seeks to rely on a letter to him from the Chairman dated December 9, 1980, which is attached to respondent's brief. However, that document is not in the record. In any event, its substance regarding the deferral of mitigation evidence is reflected in the Chairman's inquiry at the hearing.

■ Respondent failed to raise the lack of a second oral hearing as an issue before the Board. Accordingly, the Board had no opportunity to order another hearing, and did not address the issue in its report to this court. Thus, for the reasons just discussed in connection with the due process claim, respondent has waived his right to have this contention reviewed by this court. *See Athearn v. State Bar of California, supra; State Bar of Georgia v. Ellis, supra; Committee on Professional Ethics and Conduct of the Iowa State Bar Association v. Roberts, supra; In re Crane, supra.*

## V. SANCTION

■ D.C.App.R. XI § 7 provides that "the Court ... shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted." The Board recommendation clearly indicated that while respondent's conduct in the Scott case might call for some sanction *short* of suspension, the decision to recommend a two year suspension was largely based upon the Coverdale matter. The Board's findings with respect to the latter case reflect serious misdeeds which were unbecoming to the procession and prejudicial both to the client's interest and the administration of justice. Misuse of client funds, dishonesty to the client, and misleading a court were involved. These actions occurred because respondent accorded a higher priority to the collection of his fee than to serving his client or complying with professional standards. Under these circumstances, we cannot say that a two year suspension is unwarranted. Nor has any inconsistent disposition in a comparable case been brought to our attention. Accordingly, the recommended sanction of a two year suspension from practice is adopted.

*So ordered.*