## In re Irvin P. FOSTER, Respondent.
### No. 96–BG–1898.

District of Columbia Court of Appeals.

Submitted May 6, 1997.

Decided May 29, 1997.

Before FERREN, STEADMAN and RUIZ, Associate Judges.

PER CURIAM:

For conduct it rightly terms "appalling," the Board on Professional Responsibility has recommended that Respondent be disbarred from the practice of law and ordered to make restitution with interest. A copy of that Report and Recommendation is annexed hereto. Neither Respondent nor Bar Counsel has filed any exceptions; indeed, Respondent has failed to participate in any manner whatever in connection with these disciplinary proceedings at any point.

Accordingly, Respondent is hereby disbarred from the practice of law in the District of Columbia, effective thirty days from the date hereof pursuant to D.C.Bar R. XI, § 14(f).[1] Respondent shall make restitution

to his former client, Charles D. Reed, in the amount of $950, and his former clients, Thomas and Edna Long, in the amount of $750, in either case together with interest at the legal rate of 6%. D.C.Code § 28–3302(a) (1996).

### REPORT AND RECOMMENDATION

Respondent, Irvin P. Foster, was charged in three separate matters with 23 violations of multiple D.C.Rules of Professional Conduct, including two charges of violating Rule 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and two violations of Rule XI, § 2(b)(3) (failure to comply with any order of the Court or the Board).

Although on notice of the complaints and all procedural steps taken in these matters, Respondent failed to respond to any of Bar Counsel's charges, and failed to participate in any manner whatsoever in these proceedings.

A hearing was held on June 27, 1995, in No. 524–94 before Hearing Committee Number Nine. Sworn testimony regarding Respondent's misconduct was received from the complainant.

A hearing was held on February 6, 1996, in Nos. 77–95 and 186–95 before Hearing Committee Number Eleven. Sworn testimony was received from the complainants, as well as other Bar Counsel witnesses regarding Respondent's misconduct.

All of Bar Counsel's charges in the three matters were proved by clear and convincing evidence.

We need not burden this report with a complete recital of the appalling and disheartening facts of these cases. The Hearing Committees have set them out in all of their revolting details. We adopt the Committees' findings of fact in their entirety, and respectfully refer them to the Court as the findings of the Board in these matters.

Suffice it to say they portray an attorney who deliberately abdicated his professional responsibilities and the duties owed his clients without regard to the consequences, which were disastrous in the Reed matter,

---

1. Respondent's attention is drawn to all the provisions of § 14 dealing with disbarred attorneys and to the provisions of § 16 relating to the effect of noncompliance upon possible reinstatement.

and then contemptuously thumbed his nose at the legal system when called upon to account for his deplorable conduct.

Particularly reprehensible was the cruel and cynical manner in which Respondent purported to represent Charles Reed in his efforts to retain custody of his three-year old son. Even the cold pages of the transcript reflect his heartless attitude. After many frantic unsuccessful efforts to contact Respondent, Mr. Reed finally reached him by telephone the day before the custody hearing was to be held in Colorado, only to learn that the hearing had not been postponed as promised by Respondent. As Mr. Reed testified:

And that's when he told me that he didn't get the case postponed and I was going to lose custody of my son.

Q. Take your time. Take your time.

A. And he said that I didn't have a chance in hell to win custody of my son because the father never gets custody of their child. He said that I wouldn't go in anyway because it was on her turf and they don't give the child to the father and they found her to be a fit mother, which how would he know if he didn't have her checked up on, if no one checked up on how he was being treated. At that time I felt like he was her lawyer and not mine.

Q. Well, what about your lawyer in Colorado?

A. ... He told me that I didn't have a lawyer there. He just asked someone there to let him know what was going on. I said what is her name anyway? And he never gave me her name. (Tr. 105–106)

\* \* \* \*

Q. And what consequences have you suffered as a result of Respondent's behavior?

A. I lost time from my job, I lost money. I lost my son, and most of all, my son lost me. (Tr. 110–111)

Mr. Reed's mother, who also suffered severely as a as a result of Respondent's incomprehensible conduct, testified as follows:

Q. And what did he actually do?

A. He didn't do anything. He just took our money and just didn't do anything.

Q. And what consequences have you suffered as a result of Respondent's behavior?

A. Well, like I said ... we've lost CJ. My son has lost his only son. I've lost my only grandson. (Tr. 161–162)

Although the mishandling of the other two cases did not have the drastic consequences that pertained in the Reed matter, they equally demonstrated Respondent's complete lack of recognition or understanding of the duties and responsibilities a lawyer owes his clients, or an arrogant and deliberate decision to ignore them, or both.

These are not the first indications of Respondent's unfitness to be a lawyer. As pointed out by Hearing Committee Number Nine, he was previously "suspended for 30 days for neglect so pervasive as to constitute an intentional violation of ethical obligations." DR 6–101(A)(3), DR 7–101(A)(1), and DR 7–102(A)(2). *In re Foster*, 581 A.2d 389 (D.C. 1990). The Hearing Committee's report goes on to recite the wretched details of that case. (H.C.Rep. 16–17)

Earlier, Respondent was publicly censured by the District of Columbia Court of Appeals for two separate counts of neglect. *In re Foster*, No. 84–921 (D.C. Sept. 7, 1984). And, in 1993, Respondent was informally admonished by Bar Counsel as a result of his handling a criminal case in 1985 so incompetently that his client unnecessarily served seven years in jail as a result of Respondent's derelictions.

And now we have these three matters in which, in addition to shamefully neglecting his clients, Respondent lied to the Court, lied to his clients, failed to attend scheduled hearings and conferences, failed to file pleadings, failed to comply with court deadlines and orders, failed to keep his clients informed, allowed a default judgment to be entered against a client, wasted the time and resources of the court, ignored efforts by Bar Counsel and the Board to call him to account, and refused to participate in any of the subsequent proceedings.

*Hearing Committees' Recommendation*

The committees found that all of Bar Counsel's charges of violations of the D.C. Rules of Professional Conduct and Rule XI

were proved by clear and convincing evidence.

Bar Counsel and Hearing Committee Number Nine recommended a suspension of six months, with a showing of fitness before reinstatement in Bar Docket No. 524–94.

Hearing Committee Number Eleven recommended a two-year suspension with a showing of fitness before reinstatement, as well as restitution to Mr. Reed and Mr. and Mrs. Long in Bar Docket Nos. 77–95 and 186–95. Bar Counsel recommended a one-year suspension, with a showing of fitness, and restitution to Mr. and Mrs. Long of $750.00, and to Mr. Reed of $950.00.

Neither of the committees was aware of the proceedings heard by the other committee. Presumably, the sanction recommendation would have been more severe had all of the matters been heard by a single committee.

### Discussion of Sanction

Under Court's ruling in *Matter of Thompson*, 492 A.2d 866, 867 (D.C.1985), where two or more separately docketed matters are before the Board involving the same respondent, the question as to sanction should be: If all the matters were before the Board simultaneously, what would be its recommendation as to the appropriate discipline?

The Court has, on a number of occasions, disbarred attorneys for conduct falling short of misappropriation or conviction of a crime involving moral turpitude. *See In re Goffe*, 641 A.2d 458 (D.C.1994) (attorney's repeated creation of evidence, forgeries of signatures on legal documents, and forgeries of notarizations of signatures over an extended period of time in distinct and separate circumstances warranted disbarment); *Matter of Anderson*, No. 86–657 (D.C. July 28, 1986)(attorney charged with two counts each of dishonesty, practicing law in the District of Columbia in violation of its rules, neglecting a legal matter, and one count of engaging in conduct prejudicial to the administration of justice, ordered disbarred when he failed to answer petition, and did not participate in subsequent proceedings); *Matter of Haupt*, 444 A.2d 317 (D.C.1982)(attorney's pattern of neglect and willful disregard of ethical and legal duties to numerous clients, and re-

peated failures to respond to requests of Bar Counsel warranted disbarment); *Matter of Bush*, D.C.App. No. C–58–79/D–39–80 (D.C. April 28, 1980)(disbarment ordered where respondent had previously been suspended for one year and a day for neglect, and Board found a serious criminal matter and a violation of several rules, thus evidencing a persistent pattern of deliberate neglect of his ethical duties to his clients); *Matter of Carter*, No. D–31–79 (D.C. Oct. 22, 1979)(respondent disbarred after being found to have violated DR 6–101(A)(3), DR 1–102(A)(5), and DR 7–101(A)(2) and (3), and to have engaged in a pattern of misconduct); *Matter of Duesterdick*, No. D–9–75 (D.C. Aug. 15, 1975) (attorney's allowing statute of limitations to run in a negligence case, and the giving of false testimony to the hearing committee warranted disbarment).

The Board is convinced that Respondent's disgracefully unprofessional conduct in these three docketed matters and in the earlier matters in which he was disciplined demonstrates that he is not worthy of retaining the privilege of practicing law in the District of Columbia. His conduct has evidenced a persistent pattern of deliberate neglect of his ethical duties, resulting in irreparable injuries to his clients. Respondent compounded that misconduct with misrepresentations and refused to participate or respond in these proceedings. He should be disbarred.

### Recommendations

The Board on Professional Responsibility recommends that the District of Columbia Court of Appeals enter an order disbarring Respondent from the practice of law in the District of Columbia, such order to take effect 30 days after the entry thereof, and further ordering Respondent to make restitution to Mr. and Mrs. Long in the amount of $750.00, and to Mr. Reed in the amount of $950.00

In view of the seriousness of Respondent's conduct and the fact that he continues to practice law in this jurisdiction, the Board respectfully suggests that a resolution of these matters be expedited to the extent possible.

BOARD ON PROFESSIONAL RESPON-
SIBILITY

By:_____

James C. McKay

Dated: December 9, 1996

All members of the Board concur with this report and recommendation, except Ms. Christensen and Mr. Banks who did not participate, and Ms. Ossolinski, who is recused.