In re Richard L. HUBER, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals.

No. 95–BG–35.

District of Columbia Court of Appeals.

Argued Jan. 23, 1998.
Decided March 19, 1998.

Richard L. Huber, respondent, pro se.

Julia L. Porter, Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel, and Michael S. Frisch, Senior Assistant Bar Counsel, were on the brief, for the Office of Bar Counsel.

Before STEADMAN, SCHWELB and RUIZ, Associate Judges.

STEADMAN, Associate Judge.

Already temporarily suspended from the practice of law by this court's order of March 8, 1995, respondent Richard L. Huber on March 3, 1997, filed an affidavit consenting to the entry of an order of disbarment. The only issues before us relate to the recommendations of the Board on Professional Responsibility that the order of disbarment 1) provide for the payment of interest on restitution payments made or to be made, and 2) be effective only as of the time that respondent shall have filed an affidavit pursuant to D.C. Bar Rule XI, § 14(g). We adopt the recommendations of the Board and order respondent disbarred accordingly.

I.

In 1994, two hearing committees determined that Huber had engaged in numerous ethical violations, including misappropriation. In a Report and Recommendation of February 13, 1995 ("the February 1995 Report"), the Board recommended that we disbar Huber and require him to make restitution with interest to four clients.

On March 8, 1995, pursuant to a petition by the Board, this court temporarily suspended Huber from the practice of law in the District of Columbia pending our review of the February 1995 Report. *See* D.C. Bar R. XI, §§ 3(c), 14(e) (1997). On March 22, 1995, Huber filed a sworn affidavit with this court purporting to comply with our suspension order and the terms of Bar Rule XI, § 14(g). However, as it turned out, he did not comply with the suspension order. In February of 1997, Huber pled guilty to two counts of criminal contempt of this court's order placing him on interim suspension, *viz.*, the unlawful practice of law in connection with a Virginia matter and the failure to place client fees in a trust account.

Meanwhile, Huber and Bar Counsel submitted briefs for our review of the February 1995 Report, and we scheduled oral argument for March 4, 1997. One day before oral argument, Huber filed an affidavit consent-

ing to disbarment under the terms of the February 1995 Report. We granted Huber's motion to stay oral argument so that the Board could consider his affidavit consenting to disbarment and prepare a new report pursuant to Bar Rule XI, § 12(b). That Report is now before us, together with Huber's two exceptions thereto.[1]

## II.

The first question before us that Respondent Huber has identified is "[w]hether the Board erred in recommending that respondent pay interest to Isabella Johnson, John Cone and/or Charles Osterhoudt, Leroy Allen, and Miriam Kopanic." Huber argues that interest is an inappropriate component of restitution because his clients have already received their principal amounts. All four clients, he represents, have been compensated by the Clients' Security Trust Fund of the District of Columbia Bar ("CSTF") and therefore have forfeited their rights to interest.[2]

To begin, we note that Huber agreed to pay interest to these four clients by the terms of his own consent to disbarment. The February 1995 Report specifically provided for restitution on behalf of the named

clients "with interest." In his Affidavit Declaring Consent to Disbarment, Huber stated that he "accepted the order of the Board relating to restitution" and represented that he had "begun making restitution to the D.C. Bar Client Security [Trust] Fund in compliance with that recommendation." Thus Huber's own consent to disbarment incorporates by reference the Board's recommendation that he pay restitution "with interest."

■ The obligation to pay interest is intertwined with the obligation to make restitution. Even if Huber has repaid the principal—a fact not proven below and unverifiable on the record before us—that would not absolve him of the duty to pay interest for the period between the misappropriation and the repayment, if any. Interest in this context is not a consequential damage of the attorney's misconduct, *compare In re Robertson,* 612 A.2d 1236, 1239–41 (D.C.1992), but an obligation arising from the client's deprivation of the use of his or her money. *See generally Riggs Nat'l Bank v. District of Columbia,* 581 A.2d 1229, 1253 (D.C.1990) (explaining that courts impose interest to compensate creditors for delays in repayment). For this reason, we direct the respondents in disciplinary matters to make restitution not only of the principal but also of interest at the

1. In his reply brief to us, Huber suggests that the prospect of paying interest was so contrary to his understanding of the terms of his disbarment that he now "withdraws his request" for disbarment. However, he presents no cogent reason why he should be permitted to withdraw his consent and repudiate his statements under oath at this late date. As demonstrated in the text discussing the interest requirement, the affidavit expressly accepts the order of the Board, which included restitution "with interest." In any event, the issues of interest and effective date of the disbarment are not additional unexpected conditions but simply aspects of the consent to disbarment that must necessarily be dealt with in effectuating it. If the payment *vel non* of interest and the effective date were so material as to warrant withdrawal of the consent, it is inexplicable that respondent would not have dealt with them in the consent itself. All the foregoing is quite apart from the established and controlling principle of appellate review that a party may not raise new arguments in its reply brief. *See, e.g., Bingham v. Goldberg, Marchesano, Kohlman, Inc.,* 637 A.2d 81, 95 n. 34 (D.C.1994). Here, Bar Counsel has not had an opportunity to respond to Huber's argument that the interest provision vitiated his consent to disbarment.

2. With the exception of Isabella Johnson, we do not understand Huber to challenge the relevant principal amounts or the effective dates as set forth in the April 1997 Report (incorporating by reference Bar Counsel's response). As indicated in the text, Huber asserts that he has already made restitution in significant part, a fact which, if confirmed, will set the termination dates for the calculation of the relevant interest.

As to Isabella Johnson, Huber disputes the amount of his principal financial obligation as determined by the Board. However, as indicated in the text, by consenting to disbarment, Huber accepted the order of the Board relating to restitution. In his own words, "I acknowledge that the material facts in the Board's report upon which the allegations of misconduct are predicated are true." These "material facts" included a determination that Huber owed Johnson $1,751, the same amount indicated in the April 1997 Report. In light of Huber's affidavit acknowledging the truthfulness of the Board report, which was his only pleading before the Board germane to this issue, we do not review the particulars of his debt to Johnson. *Cf. In re James,* 452 A.2d 163, 168–70 (D.C.1982).

legal rate of six percent. *See, e.g., In re Foster,* 699 A.2d 1110, 1110 (D.C.1997) (per curiam); *In re Clarke,* 684 A.2d 1276, 1281 (D.C.1996) (per curiam); *In re Dietz,* 633 A.2d 850, 851 & n. 2 (D.C.1993) (per curiam); *see also* D.C.Code § 28–3302(a) (1996) (setting the interest rate "in the absence of expressed contract" at six percent per annum).

We are wholly unpersuaded by Huber's argument that his clients have assigned their claims against him to the CSTF and thus forfeited their right to interest, or that only CSTF may assert a right to interest. The CSTF is not an independent collection agency but a creature of this court, created pursuant to Bar Rule XII. This court may "require an attorney to make restitution either to persons financially injured by the attorney's conduct *or to the Clients' Security Trust Fund* (see Rule XII), *or both,* as a condition of probation or of reinstatement." D.C. Bar R. XI, § 3(b) (emphasis added).

Under the contractual terms of each client's assignment of his or her claims to the CSTF, any surplus amount that the CSTF may recover from respondent, beyond what it has already paid to the client and costs of collection, shall be paid over to the client. Thus it is proper and appropriate for this court to order Huber to make all restitution payments, both of principal to which he has not yet made restitution and interest upon all principal amounts up to the date of restitution (whether heretofore or hereafter made), to the CSTF, with the understanding that the CSTF shall forward to each client the portion of the interest attributable to that period of time that the client was deprived of his or her money (i.e., prior to the time that CSTF compensated the clients for the loss of his or her principal pursuant to Rule XII). Restitution to the CSTF must include interest for the period between the date the CSTF compensated each client and the date Huber reimbursed the CSTF in full, because the CSTF was deprived of the use of its money for such period.

## III.

The second question before us that Huber has identified is "[w]hether the Board erred in recommending that respondent should not receive credit for [the] time during which he was suspended by the Court, but did not obey the [suspension] order and that respondent's period of disbarment should run from the time he files a supplemental affidavit that complies with the requirements of Rule XI, § 14(g)." [3] Huber makes no legal argument on this point, but simply urges "that this Court use its discretion in making any disbarment nunc pro tunc to such date as the Court deems appropriate, all things considered."

Huber is in no position to raise at this point any objection to the requirement that he file a supplemental affidavit. He never in any form argued this point to the Board. Bar Counsel, in its response to Huber's Affidavit Declaring Consent, emphasized that Huber should be required to file a new § 14(g) affidavit

> in which he demonstrates with particularity and supporting proof that he has complied fully with the provisions of the Court's order of interim suspension and disbarment and with Rule XI, including notifying all clients, attorneys for adverse parties, and others listed in the rule with whom Respondent has dealt as a lawyer since his interim suspension.

Huber filed a reply to this pleading, but he addressed only the question of interest; he never addressed the proposal that he be required to file a new affidavit until filing his brief in this appeal. He has therefore waived his right to raise the argument for the first time here. *See In re James,* 452 A.2d 163, 168–70 (D.C.1982).

■ The only issue, then, is whether the disbarment should take effect from the date of the filing of the supplemental affidavit or from some earlier period, such as when respondent came fully into compliance with the terms of the suspension order and § 14. Under our rules, while an order of suspension or

**3.** The suspension itself has been effective since our order of March 8, 1995. The purpose of the § 14(g) affidavit is to ascertain compliance with the suspension order to determine when an attorney may be eligible for reinstatement. *See In re Slosberg,* 650 A.2d 1329, 1331 (D.C.1994) (explaining the provision then designated as § 14(f)).

disbarment goes into effect at the time specified in the order, the time for purposes of reinstatement does not begin to run until the attorney files an affidavit under § 14(g) demonstrating full compliance with the order of suspension or disbarment. D.C. Bar R. XI, § 16(c). Compliance with the order and the terms of § 14 is not enough without the filing of the affidavit. *See In re Wiley,* 697 A.2d 406, 407 (D.C.1997); *Slosberg, supra* note 3, 650 A.2d at 1331–33.[4] Under our rules, the filing of the affidavit is the requisite *final* step to be taken by the attorney in winding up his or her affairs after the effective date of the suspension or disbarment: the affidavit must, *inter alia,* "[d]emonstrat[e] with particularity, and with supporting proof, that the attorney *has fully complied* with the provisions of the order [of disbarment or suspension] and with this rule." D.C. Bar R. XI, § 14(g)(1) (emphasis added).

Here, Huber wilfully violated the terms of the order[5] and was convicted of criminal contempt for such actions.[6] By the very structure of our rules, his affidavit of March 1995 was therefore rendered nugatory, and an obligation was placed upon him to again bring himself into compliance with the "provisions of the order and with this rule" and to demonstrate the same with a supplemental affidavit in order to start the period of disbarment running under § 16(c). Furthermore, Huber has been on notice at least since the response of Bar Counsel filed on March 17, 1997, and the issuance of the Board Report on April 23, 1997, that, in their view, such a renewed affidavit must be filed. Yet he took no such action until January 22, 1998, the day before oral argument on his exceptions to the Board Report.[7]

Under all these circumstances, we think the Board quite properly concluded that the disbarment imposed by consent should not begin to run for purposes of reinstatement under § 16(c) until an affidavit meeting all the requirements of § 14, including a demonstration of full compliance with the order and with the rules, is or has been filed.[8] Accordingly, it is

ORDERED that respondent Richard L. Huber is disbarred from the practice of law in the District of Columbia, effective upon such date as he shall have fully complied with the temporary order of suspension and with D.C. Bar Rule XI, § 14, including the filing of the requisite affidavit, and it is further

ORDERED that respondent shall complete restitution, including interest at the rate of six per cent per annum, in accordance with this opinion.

---

4. In certain exceptional circumstances, we have accepted "full, though technically imperfect, compliance" with the affidavit requirement. *See Slosberg, supra* note 3, 650 A.2d at 1333 (distinguishing *In re Gardner,* 650 A.2d 693 (D.C. 1994)).

5. Such a state of mind is a requisite for a criminal contempt conviction. *See In re Gorfkle,* 444 A.2d 934, 939–40 (D.C.1982); *see also Zapata v. Zapata,* 499 A.2d 905, 908 (D.C.1985).

6. We do not deal here with a situation involving a lesser degree of awareness that a violation of the order or the rules has occurred, which might well present quite different considerations.

7. In a motion for leave to file post-argument response, which we grant, Bar Counsel has challenged the accuracy and sufficiency of this affidavit and two subsequent "corrected" affidavits. We do not rule upon this factual dispute for purposes of this order. Likewise, we do not rule upon the factual questions of the amount of restitution that respondent has already made and the calculation of the interest in accordance with this order. Such matters should be first determined, if necessary, through the disciplinary fact-finding processes.

8. The temporary order of suspension remains in full force and effect until the commencement date of the order of disbarment.