### In re Koteles I. ALEXANDER, Respondent.

### A Member of the Bar of the District of Columbia Court of Appeals, Bar Registration No. 408969.

### No. 04–BG–453.

District of Columbia Court of Appeals.

Submitted Dec. 9, 2004.
Decided Jan. 13, 2005.

---

7. Judge Calmeise's use of the word "unrebutted" presumably reflects the insufficiency of the contrary evidence.

Before RUIZ and GLICKMAN, Associate Judges, and KERN, Senior Judge.

PER CURIAM:

Following a hearing on this matter, the Board on Professional Responsibility issued a report and recommendation to this court that the respondent be disbarred and ordered to pay restitution of misappropriated funds to the Estate of Estella Jordan, less any amount he can establish he has already returned to the Estate, plus interest. We adopt the recommendation.

In its report, the Board found that after Estella Jordan's personal representatives had hired the respondent to help them administer Ms. Jordan's Estate, he embezzled "a total of at least $73,850" from that Estate. The Board also found that the respondent engaged in tax evasion involving client trust accounts, and knowingly misrepresented material facts to Bar Counsel about his management of Ms. Jordan's Estate. The Board recommends that this court find that the respondent violated: (1) Rule 1.3(b)(2) for intentionally damaging his client; (2) Rule 1.15(a) for commingling, intentionally or recklessly misappropriating client funds, and failing to maintain complete records of entrusted funds; (3) Rule 8.1(a) for knowingly making a false statement of material facts in connection with a disciplinary matter; (4) Rule 8.4(b) and (c) for committing theft and engaging in tax evasion, conduct which involves dishonesty; and (5) Rule 8.4(d) for seriously interfering with the administration of justice by improperly accounting to the probate court and failing to cooperate in Bar Counsel's investigation.[1] Although he provided some (incomplete) responses to Bar Counsel during the investigation of this matter, respondent did not answer Bar Counsel's charges against him, and

---

1. The Hearing Committee found violations of all of these rules except commingling of funds (Rule 1.15(a)), and knowingly making false statements to the Bar regarding a disciplinary matter (Rule 8.1(a)). The Board, however, agreed with Bar Counsel that there was clear and convincing evidence that respondent commingled funds and knowingly made a misrepresentation to Bar Counsel, given copies of bank records showing deposits of client funds into respondent's personal accounts, and the respondent's repeated statements to

did not appear at the hearing, nor before the Board. He has made no submission to this court. Indeed, part way through these proceedings he disappeared.[2] As a result, the Board's findings of fact and conclusions of law are uncontested. "As the Board's findings of the foregoing violations are supported by substantial evidence, we accept them." *In re Follette*, 862 A.2d 394, 395, 2004 D.C.App. Lexis 636, at *4 (D.C.2004) (citing D.C. Bar R. XI, § 9(g)(1)).

As a sanction the Board recommends disbarment and an order for restitution of any client funds that were misappropriated, which the Board calculated to be at least $73,850, less amounts already returned to the Jordan Estate or its beneficiaries. Fraudulent misappropriation and theft by a fiduciary attorney warrants disbarment. *See In re Taylor*, 765 A.2d 546 (D.C.2001). Misappropriation is "any unauthorized use of client's funds entrusted to [a lawyer], including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not [he] derives any personal gain or benefit therefrom." *In re Berryman*, 764 A.2d 760, 768 (D.C.2000) (internal quotations omitted). "[I]n virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence." *Id.* at 769. The findings of the Board in the case at bar show far more than simple negligence: they show a calculated pattern, over a period of time, of withdrawals from fiduciary accounts that were deposited into respondent's personal account, coupled with a deliberate effort to conceal this fact from Bar Counsel as well as from the representatives and beneficiaries of the Estate. We therefore adopt the Board's recommendation that the respondent be disbarred. We also adopt the further recommendation that respondent be ordered to restore to the Estate any unreimbursed funds he took from his client's fiduciary account without authorization. *See In re Robertson*, 612 A.2d 1236, 1240 (D.C. 1992).[3] Repayment shall be with accrued interest, compounded quarterly, at the legal rate of six percent per annum in order to compensate the Estate for the loss of the use of the misappropriated funds. *See In re Huber*, 708 A.2d 259, 260–61 (D.C.

Bar Counsel to the contrary. We accept the Board's finding that both of these rules were violated as well.

2. Respondent has been on administrative suspension for non-payment of dues since December 1, 1997. According to the Board's report, respondent communicated to his client that he had been devastated by the demise of his law firm and that he was ill with cancer. Bar Counsel was unable to serve respondent at several addresses in Virginia, New Jersey and Florida. At Bar Counsel's request, the court approved notice by certified mail at his last known address and by publication in Miami, Florida.

3. The Board estimates the amount the respondent wrongfully took as "at least" $73,850. We agree with the Board's implication that the amount is understated. The record shows that the respondent wrote a number checks to himself aggregating to $33,000 from the Riggs Estate Account and $44,000 from the Paine Webber account, totaling $77,000. He made identical deposits in the amount of most of those checks into his personal account. The record shows, however, that the respondent sometimes deposited an amount that was less than the amount drawn on the checks from the Riggs Estate Account, and kept the remainder in cash. The record reflects deposits to respondent's personal account in the amount of $30,400 from the Riggs Account, and retention of $1,450 in cash, totaling $31,850, the amount the Board recommends for restitution.

The circumstantial evidence, however, is overwhelming that the respondent also took the missing $1,150 ($33,000 less $31,850) as cash from the deposits made on June 5 and August 20, 1997, even though the slips for those deposits are missing from the record. As a result, the respondent should be held accountable for the entire $33,000 he trans-

1998) (imposing interest at six percent and noting that "[t]he obligation to pay interest is intertwined with the obligation to make restitution") (citing D.C. Bar R. XI, § 3(b) and D.C.Code § 28–3302(a)). Accordingly, it is:

ORDERED, that Koteles I. Alexander is disbarred from the practice of law in the District of Columbia. Moreover, since the respondent has not filed the affidavit required by D.C. Bar R. XI, § 14(g), we direct his attention to the requirements of that rule and their effect on his eligibility for readmission to the Bar. *See* D.C. Bar R. XI, § 16(c). It is further

ORDERED, that as a condition of reinstatement to the Bar, Koteles I. Alexander pay restitution to the Estate of Estella Jordan in the amount of $77,000, see *supra*, note 3, less any amount he can establish that he has already returned to that Estate,[4] plus interest at the rate of six percent per annum, compounded quarterly, on each unreturned withdrawal made from the Estate calculated from the date of withdrawal to the date of repayment.

*So ordered.*

---

ferred to himself from the Riggs Estate Account.

Bar Counsel filed, post-hearing, a copy of an exhibit that included "an additional check for $2,000 that respondent used to transfer funds from the Paine Webber account" to his own, which was not "available to the Hearing Committee," nor accounted for in the Board's report. Therefore, taking into account the additional $2,000 transferred from the Paine Webber account, the record shows a total of at least $77,000 wrongfully taken by the respondent.

4. According to the Board report, there is evidence that a significant amount, perhaps all, of the misappropriated funds have been returned to the Estate or applied to pay debts of the Estate. Two beneficiaries received checks totaling $13,798.42, and an additional $57,495 was subsequently deposited into the Riggs Estate Account and disbursed to Ms. Jordan's children. While the source of these deposits is unknown, the Board is of the opinion that the deposits were made "presumably through respondent's doing." There were also significant debts of the Estate, which appear to have been paid. Respondent's incomplete accounting of the Estate to the probate court and to Bar Counsel is too unclear, however, to determine precisely how much of the misappropriated funds have been returned, making it appropriate that respondent should have the burden of proof on this issue.